**Reynaldo Alfonso CANTU, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 55701.**

Court of Criminal Appeals of Texas.

Oct. 26, 1977.

Rudolfo G. Davila, Victoria, for appellant.

Ogden L. Bass, Jr., Dist. Atty. and A. B. Crowther, Jr., Asst. Dist. Atty., Angleton, Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

DAVIS, Commissioner.

Appeal is taken from an order revoking probation.

On December 15, 1975, appellant entered a plea of guilty before the court to the

felony offense of unlawful possession or marihuana. Punishment was assessed at three years, but the imposition of sentence was suspended and appellant was placed on probation.

Among the conditions of appellant's probation was the following: "A. Commit no offense against the laws of this State or of any other State or of the United States." On May 11, 1976, a motion to revoke appellant's probation was filed. The motion alleged that:

". . . the defendant, Reynaldo Alfonso Cantu, on or about the 24th day of March, 1976, in Brazoria County, Texas, did then and there intentionally and knowingly possess a usable quantity of marihuana of more than four (4) ounces."

On November 22, 1976, after a hearing, the court entered an order revoking appellant's probation. The court's order was based on its finding that appellant had been in possession of more than four ounces of marihuana on March 24, 1976.

Appellant contends that the court abused its discretion in revoking his probation because such action was based on evidence which had been illegally seized.

On March 24, 1976, Captain Gene Smith, of the Brazoria County Sheriff's Department, filed an affidavit for search warrant with Justice of the Peace Harrold Ammons. The affidavit set forth the location of the property and described the premises sought to be searched as follows:

"A gray frame, 2 story residence surrounded by a hurricane fence and trees and cutliage (sic)."

Pursuant to the affidavit, the magistrate issued a search warrant on the same date. The warrant included the above description of the premises to be searched, and then concluded with the following words:

"You are therefore, commanded to search forthwith the premises described above *and all edifices and automobiles* at the premises for the property described above and seize the property if found and bring it before me in Brazoria County, Texas. . . ." [Emphasis added.]

The search warrant was executed on March 24, 1976. Several officers were sent to the scene. One of the officers, Lieutenant Charles Wagner of the Freeport Police Department, searched a chicken coop which was located between 100 to 125 feet from the house. In the chicken coop, Wagner found a buried garbage can which contained 29 pounds, 6 ounces of marihuana.

Wagner drew a sketch of the premises in question which reflected that the residence was surrounded by what was described as a hurricane fence and attached to this fence at the back side of the premises was what appeared to be a smaller (the drawing does not purport to be drawn to scale) fenced-in area in which the chicken coop was located. The testimony of Wagner reflects:

"Q. As I understand it, the gate connected the fence enclosing the chicken coop with the fence enclosing the house, is that correct?

"A. Yes.

"Q. What was the distance from the house to the chicken coop?

"A. A hundred to a hundred and twenty-five feet.

"Q. Was there a worn trial in the grass from the house to the coop?

"A. Yes."

Appellant contends that the scope of the search was too broad and that any evidence found in the chicken coop should have been suppressed. The appellant filed a motion to suppress and same was heard at the hearing on the motion to revoke.

The State first seeks to sustain the search by arguing that the provision in the search warrant calling for a search of "all edifices and automobiles at the premises" authorized the search of the chicken coop. The appellant points out that the above provision goes beyond the premises which were described in the affidavit on which the warrant was issued.

■ In *Riojas v. State*, 530 S.W.2d 298, this Court held that the description of the place to be searched in the affidavit limits and controls the description in the search warrant. See also *McTyre v. State*, 113

Tex.Cr.R. 31, 19 S.W.2d 49; *Robie v. State*, 117 Tex.Cr.R. 283, 36 S.W.2d 175. To the extent that the warrant authorized a broader search than the affidavit had justified, it was invalid and cannot justify a search of premises beyond those described in the affidavit.

The record reflects that a baggie containing one ounce of marihuana was found inside the house and, in response to a question from appellant's counsel, Officer Smith testified that he found a "controlled substance" in appellant's bedroom in open view, "just a bunch of loose stuff . . . . It was strewed all over the floor and in the suitcase." Smith related that the suitcase was "laying open" and the "stuff" in it was visible. The State urges that after finding the marihuana in the house the officers were furnished with probable cause to search other outbuildings. See *Long v. State*, 532 S.W.2d 591. The record reflects that different officers searched the chicken coop and the house. The record does not show in what sequence the searches were conducted or whether they were simultaneous. There is nothing in the record to reflect that the marihuana was found in the house and upon the basis of this discovery that the officers proceeded to search the outbuildings.

The State also justifies the search based on the inclusion of "curtilage" in the description of the place to be searched in both the affidavit and the warrant. Resolution of this issue will turn on whether or not the chicken coop was within the curtilage of the residence to be searched.

In *Worth v. State*, 111 Tex.Cr.R. 288, 12 S.W.2d 582, this Court reviewed the various definitions of "curtilage" as follows:

" 'The inclosed space immediately surrounding a dwelling house, contained within the same inclosure. * * * It has also been defined as "a fence or inclosure of a small piece of land around a dwelling house, usually including the buildings occupied in connection with the dwelling house, the inclosure consisting either of a separate fence, or partly of a fence and partly of the exterior of build-

ings so within this inclosure." ' Bouv. Law Dict. vol. 1 (Rawle's 3d Ed.) p. 741. Also: ' "Curtilage" is a yard, courtyard, or piece of ground lying around or near to a dwelling house, included within the same fence; a fence or inclosure of a small piece of land around a dwelling house, usually including the buildings used in connection with the house, which inclosure may consist wholly of a fence or partly of a fence and partly of the exterior side of buildings so within the inclosure.' Words and Phrases (Second Series) vol. 1, p. 1183."

In *Worth*, the searchers found various parts of a still located on the defendant's land at distances between 100 and 400 yards from his residence. This Court found that the area involved was outside the curtilage of the residence.

Black's Law Dictionary (Revised 4th Ed.) defines "curtilage" as: "The inclosed space of ground and buildings immediately surrounding a dwelling house." In 25 C.J.S. p. 82, "curtilage" is defined as:

"In its most comprehensive and proper legal signification it includes all that space of ground and buildings thereon which is usually inclosed within the general fence, immediately surrounding a principal messuage, outbuildings, and yard, closely adjoining to a dwelling house . . . ."

In the instant case, the outbuilding in which the marihuana was discovered was surrounded by a fence attached to the hurricane fence surrounding the house. The hurricane fence surrounding the house appears to constitute one side of the smaller fenced-in area surrounding the chicken coop. There was testimony which reflected that it was used in "connection with the house," Wagner testifying that "there was a worn trail in the grass from the house to the coop." The distance between the house and the chicken coop was described as "a hundred to a hundred and twenty-five feet."

We find the chicken coop in which the marihuana was found to be within the cur-

tilage of the premises described in the search warrant and reject appellant's contention that the marihuana found there should be suppressed.

■ Appellant contends that the evidence was insufficient to support a finding that appellant possessed the contraband.

In *Williams v. State*, Tex.Cr.App., 524 S.W.2d 705, it was stated:

"Possession of narcotics need not be exclusive and evidence which shows that the accused jointly possessed the narcotic with another is sufficient. *Curtis v. State*, Tex.Cr.App., 519 S.W.2d 883; *Simpson v. State*, Tex.Cr.App., 486 S.W.2d 807; *Valdez v. State*, Tex.Cr.App., 481 S.W.2d 904; *Shortnacy v. State*, Tex. Cr.App., 474 S.W.2d 713; *Ochoa v. State*, Tex.Cr.App., 444 S.W.2d 763. Mere presence at a place where narcotics or dangerous drugs are possessed does not in itself justify a finding of joint possession. *Curtis v. State*, supra; *Valdez v. State*, supra. The evidence must affirmatively link the accused to the contraband in such a manner that a reasonable inference arises that the accused knew of its existence and whereabouts. *Curtis v. State*, supra; *Hineline v. State*, Tex.Cr.App., 502 S.W.2d 703; *Williams v. State*, Tex. Cr.App., 498 S.W.2d 340."

Appellant points to the testimony of Officer Smith that there were "three people in the premises" and "that they appeared to be living there." They were appellant, his wife, and one Patrick Ryan.

Rent receipts were found in the house "made out to" appellant. Probation officer Robertson testified that the only person appellant had indicated to him who lived in the house with him was his wife. Robertson stated that he knew Ryan, that he was on probation from Calhoun County, that "He was to be one of our probationers" but he had no knowledge that Ryan was living at appellant's home. While there is evidence that a baggie containing one ounce of marihuana was found in the house, the location of same or whether it was in open view was not established. As heretofore noted, Smith testified in response to questioning by appellant's counsel as to whether there was "any controlled substance—out in open sight" that there was, and it was found "strewed all over the floor and in the [opened] suitcase in appellant's bedroom."

We find the evidence sufficient to connect appellant with the offense and conclude that the court's finding that appellant possessed more than four ounces of marihuana is supported by the evidence.

No abuse is shown in revoking appellant's probation.

The judgment is affirmed.

Opinion approved by the Court.