Stephen Craig FOSTER, Appellant,

v.

The STATE of Texas, Appellee.

No. 61714.

Court of Criminal Appeals of Texas,
Panel No. 3.

Feb. 3, 1982.

On Rehearing En Banc July 21, 1982.

Robert G. Turner, Houston, for appellant.

Carol S. Vance, Dist. Atty., Larry P. Urquhart and Cris Lorenzen, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and TEAGUE, JJ.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for the possession of cocaine; the punishment is imprisonment for six years and a fine of $1,000, probated.

█ The indictment alleges that on or about August 24, 1977, the appellant "intentionally and knowingly possess[ed] a controlled substance, namely, cocaine." At the time alleged cocaine was not specifically named in the penalty group of the Controlled Substance Act. The pleading fails to allege an offense; such a pleading in *Crowl v. State*, 611 S.W.2d 59 (Tex.Cr.App. 1981) was held to be fundamentally defective. Since the pleading is fundamentally defective the court did not have jurisdiction; *Daniels v. State*, 573 S.W.2d 21 (Tex. Cr.App.1978); *Standley v. State*, 517 S.W.2d 538 (Tex.Cr.App.1975). The appellant's argument that jeopardy attached is without merit. *Ward v. State*, 520 S.W.2d 395 (Tex. Cr.App.1975); *Hill v. State*, 171 S.W.2d 880 (Tex.Cr.App.1943).

*Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978) cited and relied upon by the appellant are not in point. In those cases the Supreme Court of the United States granted certiorari to decide whether a defendant may be retried after his conviction has been reversed by an appellate court on the ground that the evidence introduced at a prior trial was insufficient as a matter of law. These were not cases in which the trial court did not have jurisdiction of the particular offense because of a fatally defective pleading.

The judgment is reversed and the indictment is ordered dismissed.

TEAGUE, Judge, concurring and dissenting.

I concur in the majority's holding that the appellant's indictment for the offense of possession of cocaine was and is fundamentally defective, and cannot be used to sustain the judgment of conviction in this cause. *Crowl v. State*, 611 S.W.2d 59 (Tex. Cr.App.1981).

However, I find I must dissent to the disposition made of appellant's contention that the evidence was insufficient.

Prior to June 14, 1978, when *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), were decided and became the Constitutional law of the land, if a person in Texas was validly convicted and appealed his cause to this Court, and this Court ruled that the evidence was insufficient to sustain the judgment of conviction, the very maximum relief an appellant could ever receive from this Court was to have the cause reversed and remanded to the trial court for a new trial.

In *Colunga v. State*, 481 S.W.2d 866 (Tex. Cr.App.1972) (On Motions for Rehearing), this Court, speaking through now Judge Tom Davis, in reply to Colunga's contention that because this Court had originally ruled that the evidence was insufficient to sustain the judgment of conviction, and in response to his argument, "this court should now 'undertake to do what the trial court failed to do,' i.e., grant his motion for a directed verdict of acquittal, stated:

> This contention, however, is against established precedent and statutory requirement. Article 44.25, V.A.C.C.P., expressly provides that, 'The Court of Criminal Appeals may reverse the judgment in a criminal action, as well upon the law as upon the facts. A cause reversed because the verdict is contrary to the evidence *shall be remanded for new trial.*' (emphasis added). In addition, this Court has held in numerous cases that the proper disposition, upon a finding that the evidence is insufficient to corroborate the testimony of an accomplice witness, is to reverse and remand that cause for a new trial. See *Noble v. State*, 100 Tex.Cr.R. 404, 273 S.W. 251; *Franklin v. State*, 62 Tex.Cr.R. 433, 138 S.W. 112; *Durham v. State*, 106 Tex.Cr.R. 85, 290 S.W. 1092; *Morris v. State*, 135 Tex.Cr.R. 384, 120 S.W.2d 592; *Donley v. State*, 167 Tex. Cr.R. 427, 320 S.W.2d 847.

Appellant also contends that a retrial of this cause would place him in double jeopardy as he was entitled to an acquittal at the conclusion of the State's evidence. This question is not before us; however compare *Dupree v. State*, 56 Tex.Cr.R. 562, 120 S.W. 871 (1909); *Andrews v. State*, Tex.Cr.App., 436 S.W.2d 546; *Whitehead v. State*, 162 Tex.Cr.R. 507, 286 S.W.2d 947. *Id.* at 869–70.

In *Andrews v. State*, 436 S.W.2d 546 (Tex.Cr.App.1969), where the defendant had received a reversal and new trial, see 407 S.W.2d 507 (Tex.Cr.App.), but he was thereafter reindicted, tried and convicted for the same offense, this Court approved of the reindictment and trial, and stated:

> The reversal awarded appellant a new, trial, and he could then be tried on the new indictment. The law against double jeopardy is not offended in the present conviction. *Whitehead v. State*, 162 Tex. Cr.R. 507, 286 S.W.2d 947.

Id. at 548.

*Burks* and *Greene*, supra, which were handed down subsequent to *Colunga* and *Andrews*, supra, held that a verdict of acquittal must be entered whenever an appellate court has found the evidence legally insufficient to sustain the verdict.[1] By its holdings, the Supreme Court thereby equated an acquittal by an appellate court with an acquittal at trial.

It had long been held, however, by both this Court and the Supreme Court, that a verdict of acquittal is a bar to retrial for the acquitted offense, even when the indictment charging the offense was fundamentally defective. *Ball v. United States*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); *Mixon v. State*, 34 S.W. 290 (1896). For more recent cases of the Supreme Court on this point, see *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977); *Finch v. United States*, 433 U.S. 676, 97 S.Ct. 2909, 53 L.Ed.2d 1048 (1977); and *Illinois v. Sommerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). Cf. *Duncan v. Tennessee*, 405 U.S. 127, 92 S.Ct. 785, 31 L.Ed.2d 86 (1972).

In *Thompson v. State*, 527 S.W.2d 888 (Tex.Cr.App.1975), this Court distinguished *Mixon*, supra. The *Thompson* Court acknowledged, however, that: "The *Mixon* case is still the law today, applied to its own facts, where the jurisdiction of the court is properly invoked and an actual trial on the merits takes place and the jury reaches a verdict based on the evidence presented."

I acknowledge the following holding in *Thompson* : "Since the indictment under which the appellant was first tried was fatally defective in that it alleged an impossible date, the acquittal instructed by the trial court does not bar a second prosecution on a new and valid indictment." Nevertheless, I believe that this Court in *Thompson* could not foresee *Burks* and *Greene*.[2] I base this statement on the fact that the *Thompson* Court went to great lengths to point out that Thompson did not endure a full blown trial, before it held: "No evidence of the appellant's guilt or innocence was presented to the jury; since the indictment alleged an impossible date, the jurisdiction of the court was not even properly

---

1. Though *Burks* and *Greene* are often cited and discussed as though they are twins, *Greene* represents nothing more than an application of *Burks*. Interestingly, my research reveals that *Greene* has not yet been finally decided, and at the moment it is still pending on the docket of what is now the Eleventh Circuit Court located in Atlanta, Georgia. This information comes from the decisions of *Greene v. Massey*, 595 F.2d 221 (5th Cir. 1979), where the Fifth Circuit remanded the cause to the Supreme Court of Florida, for that Court to answer certain questions; and *Greene v. Massey*, 384 So.2d 24 (Sup.Ct.Fla.1980), where the Florida Supreme

Court sent to the Fifth Circuit its responses to the interrogatories; as well as a telephonic communication my research assistant had on January 28, 1982, with one of the clerks of the Eleventh Circuit. The cause is, therefore, now pending on the docket of the Eleventh Circuit.

2. Compare, *Ex parte Colunga*, 587 S.W.2d 426 (1979), where the defendant in *Colunga v. State*, supra, returned to this Court by way of a post-conviction writ of habeas corpus, and successfully argued that he was entitled to relief pursuant to the dictates of *Burks* and *Greene*, supra.

invoked." The implication left by the opinion is that if Thompson had endured a completely full blown trial, after which he had obtained an acquittal, this Court would have ruled differently, for its discussion on "jurisdiction" appears almost as an afterthought in the opinion.

Applying the rationale of *Burks* and *Greene*, supra, and see also *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979),[3] to this cause, I am thoroughly convinced that we are required to review the sufficiency of the evidence whenever it is raised, even if other fundamental error is obvious, including a fundamentally defective indictment.

I believe that we should now adopt what Judge Henderson of this Court said almost 100 years ago in *Mixon v. State*, supra:

... Our constitution provides that 'no person, for the same offense, shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction.' See Const. Bill of Rights, art. 1, Sec. 14. It will be noted that the first subdivision of said article provides against being put twice in jeopardy. This jeopardy, at common law, could only be upon a good and sufficient indictment. But the last subdivision of said article provides against being put upon trial again for the same offense, after a verdict of not guilty in a court of competent jurisdiction. The court trying this case unquestionably was a court of competent jurisdiction to try it (although this jurisdiction may not have been properly invoked), and it makes an acquittal for the same offense at bar to any subsequent prosecution therefor, regardless of the validity of the indictment. See *Anderson v. State* (Tex.App.) 7 S.W. 40. But if there were any doubt as to the proper construction of this provision of the bill of rights, our statutes on the subject have set this matter at rest. Code Cr.Proc. art. 525, provides as follows: 'The only special pleas which can be heard for a defendant, are (1) that he has been before convicted legally in a court of competent jurisdiction of the same accusation, after having been tried upon the merits for the same offense; (2) that he has been before acquitted by a jury of the accusation against him, in a court of competent jurisdiction,—whether the acquittal was regular or irregular.' This article appears to draw a distinction between a conviction and an acquittal. The first subdivision requires that the conviction be a legal one in a court of competent jurisdiction; and the second authorizes the plea on an acquittal in a court of competent jurisdiction, whether the acquittal was regular or irregular. No one, we apprehend, would be so bold as to question that either a conviction or acquittal under a valid indictment, regular in form, would constitute a bar to further prosecution for the same offense. This was so at common law. But our constitution and statutes on the subject go further. The state furnishes and prepares all of the machinery with which to try a defendant, and our law says that when he has been once tried by a jury of his peers, and they have acquitted him, in a court of competent jurisdiction, he can never be again put upon trial for the same offense. If the prosecution has once placed a defendant upon trial, and the court is one of competent jurisdiction to try an offense of the character charged, and a jury has once rendered a verdict of not guilty as to said offense, no matter how irregular the procedure may have been, the state can never again place the defendant upon trial for that offense of which he had been acquitted. Such we understand to be the meaning of the constitution, and such the provisions of our Code of Criminal Procedure. . . .

If the evidence is ruled insufficient to support appellant's conviction, which issue can be resolved without considering the validity of the indictment, then appellant

---

3. *Jackson* held that to sustain a conviction, the evidence must be sufficient beyond a reasonable doubt, or due process of law has not been accorded the defendant.

should not be retried for committing the same offense for which he was convicted in this cause.

I, therefore, must dissent to the failure of this panel's majority to answer appellant's contention. In doing so, I do not mean to imply that the evidence is insufficient; merely, that I believe the question should be addressed by this panel.

Before the court en banc.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

CLINTON, Judge.

■ The Jeopardy Clause of the Fifth Amendment to the Constitution of the United States provides: "... nor shall any person be subject for the same offense to be *twice put in jeopardy* of life or limb."[1]

There is the Texas counterpart in Article I, § 14, Constitution of the State of Texas, and *more, viz*:

"No person, for the same offense, shall be *twice put in jeopardy* of life or liberty, *nor* shall a person be *again put upon trial* for the same offense, after a verdict of not guilty in a court of competent jurisdiction."

On the face of it, "jeopardy" is one thing while being "put upon trial" is quite a different matter. Whatever the "general rule in the United States" found in treatises by the Court in *Thompson v. State*, 527 S.W.2d 888, 889–890 (Tex.Cr.App.1975) and however the Court has determined when "jeop-

ardy attaches," beg the question of the meaning and operation of the second part of § 14.

The Legislature of the State of Texas rarely undertakes to interpret the Texas Constitution, but surely it endeavors mightily to frame its legislation so that an enactment will be in harmony with, and not offend, a constitutional safeguard the resultant statute parallels. Look, then, to Article 1.11, V.A.C.C.P.:

"An acquittal of the defendant exempts him from a second trial or a second prosecution for the same offense, *however irregular the proceedings* may have been; but if the defendant shall have been acquitted upon trial in a court having *no jurisdiction of the offense*, he may be prosecuted again in a court having jurisdiction."

One must note that "jeopardy" is never mentioned in Article 1.11, supra, nor has it ever been by any predecessor provision in a code of criminal procedure.[2]

Concomitantly, until amended in 1973, of the special pleas allowed an accused, Article 27.05, V.A.C.C.P., and similarly every predecessor provision, listed:

"That he has been before acquitted of the accusation against him, in a court of competent jurisdiction, whether the acquittal was regular or irregular."[3]

The *Thompson* Court concentrated too long on answers to irrelevant questions in deciding *Thompson v. State*, 527 S.W.2d 888 (Tex.Cr.App.1975), upon which the dissent

---

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

2. The rarity alluded to *ante* is Article 20, Code of Criminal Procedure of 1857, which did construe the second part of the constitutional progenitor of Article I, § 14, supra, as follows:

"Art. 20. *By the provisions of the Constitution*, an acquittal of the defendant exempts him from a second trial, or a second prosecution for the same offense, however irregular the proceedings may have been; but if the defendant shall have been acquitted upon trial, in a Court having no jurisdiction of the offense, he may, nevertheless, be prosecuted again in a Court having jurisdiction."

*Texas Codes*, Adopted by the Sixth Legislature, (Galveston 1857). (See preface by Commissioner James Willie for further explanation of the genesis of the codes.)

In the constitutional sense "jurisdiction" was by subject-matter, assigned by one provision or another or in the case of Justice of the Peace "as shall be provided by law." Article IV, § 17, and see § 10. *Ex parte Towles*, 48 Tex. 413, 431–435, 439 (1878).

3. Today, Article 27.05 reads in this respect:

"A defendant's only special plea is that he has already been prosecuted for the same or a different offense arising out of the same criminal episode... and that the former prosecution:
(1) resulted in an acquittal."

so heavily relies. Cases involving *autrefois convict* rest on entirely different principles than the question of *autrefois acquit*, and one is not controlling of the other.[4] And the second part of § 14 is probably broader than the doctrine of *autrefois acquit*, anyway.

Moreover, though the *Thompson* Court quoted from *Shoemaker v. State*, 58 Tex. Cr.R. 518, 126 S.W. 887 (1910), what was said about jeopardy, *Thompson* omits the construction given the part of Article V, § 13, being addressed today:

"... Now, the second subdivision of the Constitution above quoted is: 'Nor shall any person be again put upon trial for the same offense after a verdict of not guilty in a court of competent jurisdiction. Therefore an acquittal will bar any subsequent prosecution for the same offense if the trial occurs in a court having jurisdiction, *whether the bill of indictment is a valid one or not*'." *Id.*, S.W. at 888.

Because the proposition was thought to be "supported" by it, the Court goes on to examine what was then Article 561 in the 1895 Code of Criminal Procedure (now Article 27.05, supra), and concludes: "Where a party has been once placed upon trial in a court of competent jurisdiction, and a jury has once rendered a verdict of not guilty as to said offense, no matter how irregular the proceedings have been, the state can never again place the defendant upon trial for the same offense..."[5]

The *Thompson* Court says the fact that a first trial ends with an instructed verdict of acquittal rather than a dismissal is not determinative of a special plea of former acquittal—a most doubtful proposition on the face of it, and manifestly based on an erroneous understanding of the very case it cites for authority, *Smotherman v. State*, 415 S.W.2d 430 (Tex.Cr.App.1967).

Smotherman was first tried on an information alleging willful injury to an automobile owned by one Charles Kenneth Quinn, but the proof apparently showed another actually owned the car. A second information was presented alleging Shoemaker and another willfully injured an automobile belonging to Clinton Fontenot; a motion to quash on the ground of a former acquittal was overruled. That was not error for "evidence necessary to support the information in the case at bar would not have been sufficient to sustain a conviction to support the first information." The rule in such a situation is, said the Court, if the name of the injured party in two charging instruments is not the same, "the plea of former acquittal is ordinarily bad on its face."

*Spicer v. State*, 78 Tex.Cr.R. 57, 179 S.W. 712 (1915) does indeed say that the trial court did not err in overruling a plea of former acquittal since an information charging an impossible date was void.[6] However, the facts of the matter reveal other reasons to uphold the trial court. When the first case was called for trial Spicer announced ready, the county attorney discovered the mistaken date and indicated his desire to dismiss the complaint; Spicer insisted the court enter a verdict of not guilty since he had made his announcement in the case, and the court acceded. A

---

4. *Ogle v. State*, 43 Tex.Cr.R. 219, 63 S.W. 1009 (1901) failed to present squarely the issue we now face, since the first *conviction* was for murder in the second degree on an indictment charging him with murder; that was set aside on habeas corpus because the grand jury which returned the indictment was composed of thirteen jurors; on a second trial for murder appellant plead in bar his "acquittal" of murder and his *conviction* for second degree murder; he was again convicted on the latter degree of murder. Compare *Ex parte Moore*, 46 Tex. Cr.R. 417, 80 S.W. 620 (1904).

5. *Crow v. State*, 92 Tex.Cr.R. 484, 244 S.W. 1026 (1922) indicates a special plea under for-

mer Article 572 (now Article 27.05, supra) would be good when a verdict of acquittal is returned by "an irregular jury."

6. *Spicer* did *not* hold that which the *Thompson* Court attributes to it: "This Court held that since a conviction under the first complaint would have been a nullity there was no prior acquittal for purposes of Art. 1, Sec. 14, of the Constitution or what is now Art. 1.11 of the Code of Criminal Procedure." The *Spicer* opinion mentions neither the constitutional section nor the statutory article; and, shall be shown in the body above, there was no trial.

second complaint was promptly filed, and when the case was called for trial he filed with the clerk a plea of former acquittal and a motion to postpone, but to the court's inquiry if Spicer wanted to present the motions and obtain a ruling his counsel replied, "I do not care whether you rule on them just now or not," and did not call the motion to the court's attention but announced ready and proceeded to trial; not until after verdict was rendered was there complaint. Just as the Court held the motion to postpone had been waived "in law," so had the special plea. Additionally, the first direction of acquittal, though after announcement, came before trial, so the constitutional and statutory provisions now under consideration never came into play.[7]

Similarly, in *Thompson*, except that a jury had been selected and sworn when counsel for Thompson called attention to the defective indictment, evidence had not yet been adduced. Thus, though jeopardy may have attached for purposes of the Jeopardy Clauses, that conclusion "begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial," *Illinois v. Somerville*, 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425 (1973). The true question we encounter in the case at bar was never really raised by the facts in *Thompson*, for in the latter there was no trial on the merits. Section 13 and the supporting statutory provisions clearly contemplate a trial at which some evidence is admitted before the factfinder, but not enough—an acquittal. Had *Thompson* properly analyzed the situation, its result would be unremarkable.[8]

All of which is to say that the *Thompson* opinion is not a reliable guide for the terri-

tory the Court is exploring today. The dissent permits itself to be directed away from and outside the limited area of our real concern—the meaning and application of the second part of Article I, § 14 and its implementing statutes. However, we need not undertake to go it alone, for there is seasoned guidance readily at hand.

Even before *Mixon v. State*, 35 Tex.Cr.R. 458, 34 S.W. 290 (1896), Judge Hurt had found the way for the predecessor Court of Appeals, and pointed it out in *Anderson v. State*, 24 Tex.App. 705, 7 S.W. 40 (1886):

"... At common law, and, we suppose, in most of the states, to plead successfully former acquittal, the first trial must have been upon a good and sufficient indictment, information, or complaint. Is this the case in this state? Section 14 of the bill of rights reads: 'No person, for the same offense, shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon trial for the same offense after a verdict of not guilty in a court of competent jurisdiction.' ... In this state it is now held, and was at the time of making the constitution, the law of this state, that when the accused pleads to a good indictment before a court of competent jurisdiction, and the jury are sworn to try the case, jeopardy attaches. Now, if this be so, why provide that no person shall again be placed upon trial for the same offense after a verdict of not guilty in a court of competent jurisdiction? Is it not evident that this is inhibited by the jeopardy clause of the constitution? Would any court permit a party to be again tried for the same offense, when he had been tried upon a *good and sufficient indictment*, before a

---

7. The judge in *Spicer* could have done what the Court in *Thompson* suggested was the proper way to handle the problem: dismiss the charging instrument, rather than instruct a verdict of acquittal, *id.*, at 889, n.1.

8. The *Thompson* Court further reflects the general failure to appreciate the concept reduced to specific language by the provisions. Thus, it invites the reader to compare with *Ward v. State*, 520 S.W.2d 395 (Tex.Cr.App.1975), but in that case the first trial resulted in a *convic-*

tion, and it was later determined that the indictment was defective. Like *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), which is also compared by *Thompson*, *Ward* implicates the "manifest necessity" principle developed in constitutional law of jeopardy by the Supreme Court of the United States, which is applicable to the states through the Fourteenth Amendment. Here we are addressing unique provisions of our own law.

court of *competent jurisdiction,* and acquitted by a jury? Does it require a constitutional provision to shield him a second trial, under the above facts? We think not. But, as it frequently occurs that an accused is placed upon trial for an offense before a court of competent jurisdiction, upon indictments vicious *in substance,* and that long and tedious trials are had, resulting in verdicts of acquittal, was it not the intention of the constitution to say to the state that the accused shall not be tried again for the same offense, though the indictment was, in substance, insufficient? After a most thorough examination of this subject, we are of the opinion that this was the intention of the framers of the constitution." [Emphasis in original]

So today we but follow long established precedent in holding that, though the judgment of conviction must be reversed because of a fatally defective indictment, this Court will examine and decide the contention that the evidence is insufficient as a matter of law to support that judgment.[9] To that task we now turn.

At about eleven o'clock during a summer evening City of West University Place Police Officer S. D. Stribling and other police officers executed a search warrant that commanded him to search for marihuana in a one story frame private residence, after several hours of surveillance revealed "very little traffic in and out of the residence."[10] In the driveway a Datsun was parked. Officer Stribling first saw appellant in the living room area, the room one enters immediately from the front doorway.[11] A male and female were in the den area playing a game Officer Stribling thought to be backgammon. One Frank Browning was accosted by another officer near a washing machine in the kitchen. (At one point Officer Stribling, the only witness in the case, said the four persons—all occupants in the house were arrested; at another, however, he agreed there were "four *other* people . . . in the residence," as well as appellant, but we have been unable to locate the fifth one.)

The officer who came across Browning in the kitchen searched the refrigerator, and behind a butter dish in its butter compartment he found and seized two small baggies of white powdery substance that turned out to be 2.2 grams of 11% cocaine which is the subject of the instant criminal action. From somewhere in the residence another officer discovered and retained over five thousand dollars in currency, and Officer Stribling said there was "evidence" of marihuana "throughout the house."[12] Though he professed failed memory of how he came by the keys, Officer Stribling himself unlocked the Datsun outside, searched it and took from its trunk a suitcase "full of marihuana."[13] However, he never testified any

9. The gist of the matter, as the dissent views it, is "that when trial is had on a void indictment the State is effectively deprived of an opportunity to present evidence which would support a conviction since the court is completely without authority to make any determination." That innovation simply will not withstand even a modest understanding of the second part of § 14 of our Bill of Rights, much less the opinions of able jurists who were closer in time to, and more directly aware of intentions of, the framers of our Constitution and of the legislators who enacted its implementing legislation.

10. Notwithstanding the relatively peaceful atmosphere the officers felt obliged to gain entry by taking out the front door with a sledge hammer.

11. Officer Stribling described the layout of the residence as follows:

"As you walk into the door, you walk into the living room. Directly behind the living room is a den-type area. To your right is the kitchen door leading to the kitchen . . . [and] to your left is a hall way leading to the bedrooms and bath area."
He also located a desk "to your immediate left" as one goes through the living room area.

12. The specific location of some items seized in the house was not identified since, when objection was made, Officer Stribling was properly not permitted to relate where another officer who turned it in to Officer Stribling said he had found it. Similarly, at least three other exhibits tendered by the State were refused admittance by the judge.

13. Objection to his gratuitous characterization that the suitcase came "from the Defendant's Datsun in the driveway" was sustained by the

marihuana or other controlled substance was found in the living room.

Browning told officers "he had been staying there for a short period of time." Neither appellant nor any one else in the residence made that kind of admission. However, looking through the desk to the left of the living room, Officer Stribling found in one of its drawers an unopened envelope bearing no date of mailing from "Entex"—apparently a gas utility company—indicating appellant as addressee, giving the street name and number of the residence where he and the others were found.[14]

About two months after the seizure, his attorney filed a motion for return of $5,342. in U.S. currency "belonging to Movant," and upon agreement of the prosecution that motion had been granted by a judge other than the one who presided at the subsequent bench trial. Neither the motion nor the order were admitted in evidence at trial.

The Court has accepted the delineation by the Supreme Court of the United States of that inquiry on review of sufficiency of evidence necessary to meet " 'the constitutional minimum required to enforce the due process' right to be free from conviction except on proof beyond a reasonable doubt," *Griffin v. State*, 614 S.W.2d 155, 158 (Tex.Cr.App.1981). The critical inquiry, explained the Supreme Court, in *Jackson v. Virginia*, 443 U.S. 307, 318–319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), "does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' ... Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt [emphasis in original]."

The State renews substantially the argument it made to the trial court. That is, that trier of fact could reasonably infer criminal responsibility on the part of appellant for possession of the cocaine: "from appellant's presence at those premises, the utility bill addressed to appellant at those premises, and appellant's request for return of the money seized in the house,[15] that appellant occupied and controlled the premises ... [and, further,] ... from the quantity of marihuana strewn throughout the house and concealed in the car on the driveway, and the large amount of cash on hand, that appellant was not only aware of the controlled substances but was engaged in trafficking in them." However, we are not persuaded that the resolution of this circumstantial evidence issue is so easily resolved.

■ In order to establish unlawful possession of a controlled substance, the State must prove both that the defendant exercised care, control and management over the contraband *and* that the defendant knew that the substance possessed was a controlled substance. *Naquin v. State*, 607 S.W.2d 583 (Tex.Cr.App.1980); *Pierce v. State*, 577 S.W.2d 253 (Tex.Cr.App.1979).

■ In *Hernandez v. State*, 538 S.W.2d 127, 130 (Tex.Cr.App.1976) it was observed that,

" '[p]ossession means more than being where the action is; it involves the exercise of dominion and control over the thing allegedly possessed.' Whether the theory of prosecution is sole or joint possession, the evidence must affirmatively link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that *the*

attentive trial judge. There is no evidence as to who owned or had operated the car.

**14.** Prior testimony by Officer Stribling describing the envelope had been admitted over objection by the trial judge for the limited purpose of showing occupancy of the residence; when the envelope was identified and offered appellant expressly voiced "no objection." The State calls this a "gas bill," but at trial the best

Officer Stribling could do was to "presume it's a bill;" it was admitted in evidence still unopened, so the content of the envelope remains unknown.

**15.** Since the fact of this matter is now shown by evidence presented in trial, see *ante*, we pretermit further discussion of it.

accused knew of the contraband's existence and its whereabouts."

But where the accused is not in exclusive control of the place where the contraband is found, it cannot be concluded that he had knowledge and control of it unless there are additional independent facts and circumstances which affirmatively link him to the contraband. *Olguin v. State*, 601 S.W.2d 941 (Tex.Cr.App.1980). To restate the principle, absent direct evidence of the defendant's exclusive possession of a controlled substance, possession, if any, must be proved by circumstantial evidence. *Pierce,* supra; *Presswood v. State*, 548 S.W.2d 398 (Tex.Cr.App.1977); *Abercrombie v. State*, 528 S.W.2d 578 (Tex.Cr.App.1974); cf. *Harris v. State*, 486 S.W.2d 88 (Tex.Cr.App. 1972). Accordingly, we move as we must to assay incriminating circumstances adduced or omitted at trial.

The record fails to reflect with any degree of certainty that appellant did or did not own,[16] lease,[17] rent,[18] control[19] or occupy[20] the dwelling place in question; he was, of course, on the premises, but all we know about his physical presence is that when the officers went through the front door he was in the living room.[21] *Woods v. State*, 533 S.W.2d 16 (Tex.Cr.App.1976) confirms that is not enough to justify a finding of possession, when as here, "[t]here was no marihuana in plain view in the living room where appellant was found," *id.*, at 18.

The mailing from "Entex" may or may not be a gas utility bill, see note 14, *ante*; so the most it can mean is that "an envelope addressed to appellant at the address searched existed," *Haynes v. State*, 475 S.W.2d 739, 742 (Tex.Cr.App.1972), having been delivered at some unknown point in time to the residence. And, in this respect, we continue to read *Haynes v. State*, supra, as holding that such testimony does not go "to the truth of the matter asserted" on the face of an extrajudicial writing, but is admitted "as circumstantial evidence from which an inference may be drawn," *Beltran v. State*, 593 S.W.2d 688, 690 (Tex.Cr.App. 1980). See also *Woods v. State*, 533 S.W.2d 16 (Tex.Cr.App.1976).[22] Still, that which indicates that a utility servicing the searched premises bills an account in the name of the accused, though admissible as a circumstance, is a factor which has been

**16.** In *Hineline v. State*, 502 S.W.2d 703 (Tex.Cr.App.1973) a homestead affidavit, along with evidence of title, helped establish affirmative linkage, *id.*, at 705.

**17.** Among a host of other paper revelations in *Herrera v. State*, 561 S.W.2d 175 (Tex.Cr.App. 1978) was a contemporaneous lease of the premises indicating the accused would reside there, *id.*, at 178.

**18.** *Cantu v. State*, 557 S.W.2d 107 (Tex.Cr.App. 1977) involved "rent receipts 'made out to' appellant," *id.*, at 110.

**19.** *Curtis v. State*, 519 S.W.2d 883, 886 (Tex.Cr. App.1975).

**20.** See, e.g., *Carr v. State*, 480 S.W.2d 678 (Tex. Cr.App.1972).

**21.** Officer Stribling was not asked to and did not elaborate on the "very little traffic in and out of the residence" observed during surveillance enough to provide an inference as to how long appellant had been there and, since it was not shown that the Datsun belonged to him, how he got there. Compare *Curtis v. State*, 519 S.W.2d 883 (Tex.Cr.App.1975).

**22.** The *Woods* Court sought to harmonize many of the cases dealing with linkage by writing or paper; it concluded that the two envelopes from record clubs seemingly addressed to appellant at a post office box did *not* affirmatively link him to possession of contraband found along with the envelopes in a small cardboard box on a shelf of a closet in a bedroom, beyond a reasonable doubt. Instead, in that revocation of probation matter, the Court weighed the proof by a preponderance of evidence standard, and concluded:

"We hold that the presence of the appellant at the premises searched, along with the two envelopes apparently addressed to him and found with the contraband, was sufficient to meet this lower standard of proof."

The rationale suggested by *Woods* and similar decisions it surveyed appears to be that one or more papers bearing the name of the accused can take on such a character of being a "possession" that when found among or in close proximity to an item of contraband the latter may reasonably be said to be his "possession" as well, especially if the accused be present at the time, and thus enable the trier of fact to attribute to him an awareness of the whereabouts of the controlled substance and control over it.

given little weight, e.g., *Williams v. State*, 498 S.W.2d 340 (Tex.Cr.App.1973); *Williams v. State*, 521 S.W.2d 275 (Tex.Cr.App. 1975); cf. *Herrera v. State*, 561 S.W.2d 175, 179 (Tex.Cr.App.1978).

■ Accordingly we are unable to find that presence of appellant in the living room of the residence coupled with the "Entex" envelope in a desk drawer is sufficient to show that he occupied and controlled the premises and, thus, the two baggies of cocaine behind the butter dish in a compartment of the refrigerator in the kitchen where Browning was found. *Higgins v. State*, 515 S.W.2d 268 (Tex.Cr.App.1974): "The fact the LSD was located in a refrigerator easily accessible to all occupants of the house is not sufficient to conclude that appellant had control and dominion over the contents of the 'Coricidin' bottle [containing it]," *id.*, at 270–271. That "evidence" of marihuana was in other rooms or areas of the residence or that marihuana was in a closed suitcase in a locked automobile outside does not show that appellant had knowledge of the actual care, custody, control or management of, cocaine in the refrigerator for which he was tried. *Carr v. State*, 480 S.W.2d 678, 679–680 (Tex.Cr.App. 1972); *Kinkle v. State*, 474 S.W.2d 704 (Tex. Cr.App.1972); *Culmore v. State*, 447 S.W.2d 915 (Tex.Cr.App.1969); see *Bush v. State*, 631 S.W.2d 760 (Tex.Cr.App.1982) and *Woods v. State*, 533 S.W.2d 16 (Tex.Cr.App. 1976).

Accordingly, further prosecution may not be had in this cause. *Olguin v. State*, 601 S.W.2d 941, 943 (Tex.Cr.App.1980); *Damron v. State*, 570 S.W.2d 933, 937 (Tex.Cr.App. 1978).

The judgment is reversed and an acquittal is ordered.

TOM G. DAVIS, Judge, dissenting.

In appellant's motion for rehearing he contends the panel opinion was in error in declining to review the sufficiency of the evidence to support the conviction. Appellant points to the fact that he timely raised the question of sufficiency of the evidence and urged that the record should be reviewed to determine if appellant could be retried under a new indictment alleging the same offense.

The failure to allege an offense renders an indictment insufficient to invoke the jurisdiction of the trial court. See *Ex parte Cannon*, 546 S.W.2d 266. Absent jurisdiction, the judgement of the trial court is void ab initio. *Standley v. State*, 517 S.W.2d 538; see, e.g. *Reed v. State*, 586 S.W.2d 870; *Ex parte Roberts*, 522 S.W.2d 461.

"All jurisdictional requirements must be satisfied or the court's action, other than dismissal, is void." See *Ex parte Cannon*, supra (concurring opinion). This Court stated in *Emery v. State*, 57 Tex.Cr.R. 423, 123 S.W. 133:

"There are three facts that seem to be absolutely necessary to the jurisdiction of the court or as jurisdictional questions: First, the court must have jurisdiction of the person; second, of the subject-matter; and, third, to render the particular judgment rendered. *Otherwise, the prosecution will be void, as also the judgment.*" (Emphasis added.) Id. at 134.

It is well settled that regardless of the court, it is without the power to hear a matter without the prerequisite of having jurisdiction attach:

"If the court has no jurisdiction, it should proceed no further with the case other than to dismiss it for want of power to hear and determine the controversy. *In such a case, any order or decree entered, other than one of dismissal, is void.*" (Emphasis added.) *Hall v. Wilbarger County*, 37 S.W.2d 1041, 1046 (Tex.Civ. App.—Amarillo 1931), affirmed, Tex.Civ. App., 55 S.W.2d 797.

Likewise, in *Cleveland v. Ward*, 116 Tex. 1, 285 S.W. 1063, the Supreme Court of Texas reasoned:

"... Since the ... district court had no jurisdiction of this particular case, what was done therein was necessarily void, for *judicial action without jurisdiction is void.*" (Emphasis added.) Id. at 1071. See also 15 Tex.Jur.2d, Courts, Sec. 50; 16 Tex.Jur.2d, Criminal Law, Sec. 181.

It has been repeatedly held that where a trial court was without jurisdiction for any reason, the judgment rendered by it is void. *State v. Olsen*, 360 S.W.2d 398 (Tex.Sup.Ct. 1962). Such a failure of jurisdictional matters cannot be removed through mutual consent of the parties, *Macdiarmid v. Lawbar Petroleum*, 456 F.Supp. 503 (E.D.Tex. 1978); *Nelson v. State*, 324 S.W.2d 898, rev'd 160 Tex. 515, 334 S.W.2d 788, nor can it be waived by the failure of the defendant to object. *Casias v. Texas*, 503 S.W.2d 262. Rather, such a void judgment is conclusive of nothing. *Ex parte Duncan*, 42 Tex.Cr.R. 667, 62 S.W. 758.

This Court in *Thompson v. State*, 527 S.W.2d 888, said:

"The general rule in the United States is that 'an acquittal on an indictment so defective that, ... it would not have supported a conviction or sentence ... (is) ... insufficient to support a plea of former acquittal.' 22 C.J.S. Criminal Law Sec. 246; accord, 21 Am.Jur.2d, Criminal Law, Sec. 172; 16 Tex.Jur.2d Criminal Law, Sec. 121.

"In 1885, the predecessor of this Court held that when an indictment is so defective that the defendant, if found guilty, would be entitled to have any judgment against him reversed, he had not been put in jeopardy, and if he was acquitted he could be tried again on a new and valid indictment. *Grisham v. State*, 19 Tex. App. 504 (1885).

"In 1901 this Court held that where the indictment was void because the grand jury was improperly constituted the jurisdiction of the trial court did not attach and that the appellant had not been placed in jeopardy by his first trial. *Ogle v. State*, 43 Tex.Cr.R. 219, 63 S.W. 1009. Just ten years later this Court again held 'jeopardy will not attach unless there is a valid bill of indictment.' *Shoemaker v. State*, 58 Tex.Cr.R. 518, 126 S.W. 887. As recently as 1963, this Court stated that '[j]eopardy will attach only upon a good and sufficient accusatory pleading. Jurisdiction of the court trying the prior cause is an essential prerequisite where jeopardy is pleaded.' *McAfee v. State*,

363 S.W.2d 941 (Tex.Cr.App.1963).'" 527 S.W.2d 888 at 889.

In *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 the United States Supreme Court, in a 1978 opinion, held that an accused cannot be subjected to a second trial when a conviction in a prior trial was reversed by an appellate court for lack of sufficient evidence to support such conviction. The Supreme Court held that the Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.

While *Thompson* and authorities cited therein predated *Burks* its holding, that jeopardy does not attach where trial is upon a void indictment which precluded the trial court from acquiring jurisdiction, is still valid. When the trial court has failed to acquire jurisdiction it is without authority to hear the cause or make any determination therein. It follows that when trial is had on a void indictment the State is effectively deprived of an opportunity to present evidence which would support a conviction since the court is completely without authority to make any determination. Therefore, where reversal resulted in the first trial for failure of the court to acquire jurisdiction retrial should not be prohibited under the holding in *Burks*. The panel on original submission properly declined to review the sufficiency of the evidence to support the conviction.

I dissent.

DALLY, W. C. DAVIS and McCORMICK, JJ., join this dissent.