Kenneth Ray KASPAREK, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–85–085–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 9, 1986.

Michael P. Haines, J.L. Sadick, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., James C. Brough, Elaine Bratton, Asst. Dist. Attys., Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Kenneth Ray Kasparek, appeals from a judgment of conviction for the offense of possession of phenylacetone and methylamine with the intent to manufacture a controlled substance, namely methamphetamine, weighing at least four hundred grams by aggregate weight, including any adulterants and dilutants. The appellant waived a trial by jury and pled not guilty. The court found him guilty and assessed his punishment at seven years confinement and a one thousand dollar fine. The seven years confinement was probated. We affirm.

The appellant and his co-defendant, Donald Wayne Kettler, were tried together and

both were found guilty by the court and assessed the same punishment.

At the appellant's trial, Officer W.L. Kendrick of the City of Houston narcotics division testified that on June 24th and 25th, 1983, he, and six to eight other law enforcement officers conducted a detailed surveillance of the appellant and his codefendant, Donald Wayne Kettler. They conducted this surveillance as the result of information received from an unidentified informant. This information revealed that Kettler was going to set up a methamphetamine laboratory operation and would have the methamphetamine powder ready for delivery by June 26, 1983. The purpose of the surveillance was to follow the suspect and his operations, and to take possession of the methamphetamine laboratory and make an arrest.

The surveillance started on June 24, 1983 by following Kettler from his apartment complex at 4000 San Felipe to a location at 3327 Red Ripple Street. Kettler was alone and he was driving a blue and white Chevrolet pickup truck. At the Red Ripple address, Kettler met with the appellant. The two were observed by the officers moving several cardboard boxes from the garage at that location to Kettler's truck. The boxes had a red chemical insignia printed on them.

The officers then followed the appellant and Kettler to 7516 Battle Pine, in Houston, Texas. At this location, Kettler and appellant took something that resembled a generator or a pump from the garage and put it in the truck. Kettler was driving the truck and the appellant was riding as a passenger. The officers then followed the appellant and Kettler to 3530 Pinemont, which is a business park in Houston, Texas. They backed the truck up to Unit D, at this address, to a large garage type door which Kettler unlocked with a key. They unloaded the boxes and the generator-like object from the truck into Unit D.

The officers then followed the appellant and Kettler to a hardware store at Pinemont and Antoine. They went in and stayed about ten minutes, and came out carrying plastic or rubber tubing. They then returned to the Pinemont location. They stayed there for some time and then left and went to a night club. Around 1:00 a.m. on June 25, 1983, the officers observed the appellant and Kettler leave the night club and drive to a Weingarten grocery store on Oak Forest Boulevard. They purchased four bottles of distilled water and four bags of ice. Officer Kendrick testified that such distilled water and ice are used for cooling a certain reaction in the manufacture of methamphetamine. The appellant and Kettler then went back to the Pinemont location and both remained there until 10:00 a.m. the next morning, June 25, 1983. At this time Kettler came out and went to a nearby convenience store and purchased more ice and water and returned. Around 11:30 a.m. that day Kettler left and went to his apartment on San Felipe.

During the early morning hours of June 25, 1983, after appellant and Kettler had returned from the Weingarten store with ice and distilled water, Officer E.G. Chance walked up to the outside wall of Unit D and smelled a familiar odor which he associated with the manufacture of methamphetamine. Based upon his years of experience and his association with the smell of methamphetamine, he formed the opinion that methamphetamine was being manufactured inside Unit D. Officer Chance left, obtained a search warrant and returned to the location at 3530 Pinemont.

Around 8:30 p.m. the same day, June 25, 1983, Kettler returned to the Pinemont location and was arrested near the building in which Unit D was located. After arresting Kettler, the officers then executed the search warrant. Upon entering Unit D the officers smelled an odor similar to one produced when making methamphetamine. They found a black metal cabinet on the south wall of the warehouse portion of Unit D. There was a reaction going on inside the metal cabinet and water was circulating through some tubing between the cabinet and some Igloo ice chests. There was a long flask containing a bub-

bling liquid, in the cabinet, inside a heater mount.

The appellant, Kasparek, was found asleep in a bed in a portion of Unit D which was his living quarters. The appellant was located twenty to thirty feet from the cabinet. The smell of the same odor that was in the other portion of Unit D was also strong in the appellant's bedroom and living quarters. In the opinion of officer Kendrick he had found a methamphetamine laboratory manufacturing methamphetamine.

In the bedroom the officers found a gallon jug of what was labeled methylamine and a small jar of mercuric chloride and other chemicals. The state chemist testified that the contents of this large bottle were indeed methylamine and that the small jar did contain mercuric chloride which is used as a catalyst in the manufacture of methamphetamine.

The state chemist, Mike McGeehon, testified that he went to the scene the night of June 25, 1983 while the officers were still there. Inside the black cabinet he found a three-holed round bottom flask, a heating mantle, some condensers, rubber hoses and a tub with water. He testified that after taking care, custody and control of these items he ran a test on the contents of the three-holed round bottom flask and found that it contained a substance called phenylacetone. McGeehon testified that methylamine, phenylacetone and mercuric chloride are used in the manufacture of methamphetamine.

The appellant testified that he resided at 3530 Pinemont Unit D in an apartment located inside the welding and fabricating shop, which he operated. It was his contention that he was asleep in his apartment and knew nothing about what Kettler was doing in his shop. He stated that he never left his bedroom on June 25, 1983, and that he had given Kettler the key to his shop that day.

In his sole ground of error, appellant alleges that the trial court erred in determining that there was a nexus linking him to the possession of the contraband with the intent to manufacture methamphetamine. Stated another way, appellant is alleging that the evidence in the case is insufficient to sustain his conviction.

■■■ The Controlled Substance Act defines possession as actual care, custody, control or management. Tex.Rev.Civ.Stat. Ann. art. 4476–15 § 1.02(23) (Vernon 1979). To establish unlawful possession of a controlled substance, the state must prove two elements: (1) that the accused exercised care, custody, control, or management over the contraband and (2) that the accused knew the matter possessed was contraband. *Oaks v. State*, 642 S.W.2d 174 (Tex. Crim.App.1983); *Dubry v. State*, 582 S.W.2d 841 (Tex.Crim.App.1979). Regardless of whether the theory of prosecution is joint or sole possession, the evidence must so affirmatively link the accused to the contraband that it is reasonable to infer the accused knew of the contraband's existence and nature. *Naquin v. State*, 607 S.W.2d 583 (Tex.Crim.App.1980). In the absence of direct evidence of exclusive possession by the accused, this affirmative link may be established by showing additional facts and circumstances which indicate the accused's knowledge and control of the contraband. *Foster v. State*, 635 S.W.2d 710 (Tex.Crim.App.1982); *Dubry v. State, supra*. The circumstantial evidence must consist of facts and circumstances which are additional to the accused's presence at the location of the contraband and tend to indicate the accused's knowledge and control. *Dubry v. State, supra*. *Bogert v. State*, 681 S.W.2d 822 (Tex.Civ.App.— Houston [14th Dist.] 1984, pet. ref'd).

The standard of review in both direct and circumstantial evidence cases requires the reviewing court to consider all the evidence in the light most favorable to the verdict or judgment and then determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Houston v. State*, 663 S.W.2d 455 (Tex.Crim.App.1984).

Viewed in the light most favorable to the verdict, the record reflects the following:

The appellant testified that he had the exclusive control over the premises and that he had the only keys to the premises, that he provided Kettler with the key for a short time only. He also stated that he was the sole resident of the premises. The testimony of the officers and the chemist show that a methamphetamine laboratory was operating with the appellant present. The laboratory was only twenty to thirty feet from where he was sleeping. There was a strong odor, typical of the manufacture of methamphetamine in the bedroom where he was sleeping. No one else was present at the time he was arrested. The officer and the chemist also testified that they found the chemicals, methylamine and mercuric chloride in the room where he was asleep along with several other chemicals. They found the chemical phenylacetone in a large round bottle located inside a heater mount in a cabinet twenty to thirty feet from where the appellant was sleeping and there was a chemical reaction taking place in this bottle when the officers arrested the appellant.

The officers testimony resulting from their surveillance shows that Kettler went to the Red Ripple location and met the appellant. There they loaded boxes bearing red chemical insignia into Kettler's pickup truck, they proceeded to the Battle Pine location for a pump or generator. A pump was used in the methamphetamine laboratory. The evidence further shows that they drove to appellant's premises where together they unloaded the contents of this property from the truck. Later the same day, after a visit to a night club, they went together to purchase four bags of ice and four bottles of distilled water. They also went together to a hardware store, where they purchased rubber tubing.

The evidence shows that the items the appellant helped Kettler assemble were found by the officers inside the premises belonging to the appellant. These items were in use, as stated by the officers and the chemist, in the operation of a methamphetamine laboratory, which was in operation when they executed the search warrant and arrested the appellant inside the premises.

We find from the review of this evidence that the trial court was correct in finding that there was a nexus linking the appellant to the possession of the contraband with the intent to manufacture methamphetamine. We overrule appellant's ground of error.

Accordingly, the judgment of the trial court is affirmed.