**Ex parte Morrell Richard CHARLES.**

**No. 59772.**

Court of Criminal Appeals of Texas, En Banc.

April 25, 1979.

Rehearing Denied July 11, 1979.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

DALLY, Judge.

This is a post-conviction writ of habeas corpus proceeding. Art. 11.07, V.A.C.C.P.

On May 2, 1977, the petitioner was convicted of the offense of delivery of sinequan, a dangerous drug. The punishment assessed was imprisonment for five years.

 The petitioner now asserts that the indictment under which he was convicted is void. If the indictment is void the trial court did not have jurisdiction and the judgment is subject to collateral attack. See *Ex parte Russell*, 561 S.W.2d 844 (Tex. Cr.App.1978); *Ex parte Valdez*, 550 S.W.2d 88 (Tex.Cr.App.1977); *Ex parte Banks*, 542 S.W.2d 183 (Tex.Cr.App.1976).

The indictment alleges:

". . . MORRELL RICHARD CHARLES did then and there knowingly and intentionally DELIVER A DANGEROUS DRUG, NAMELY: SINEQUAM, A DRUG PROHIBITED TO BE DISPENSED WITHOUT A PRESCRIPTION TO THOMAS CONNOLLY; . . ."

 We hold the indictment fails to allege an offense. The indictment would not be sufficient if it merely alleged without naming the drug that the appellant knowingly and intentionally delivered to Thomas Connolly a dangerous drug which could not be dispensed without a prescription. See e. g., *Baker v. State*, 123 Tex. Cr.R. 212, 58 S.W.2d 535 (1933); *Horton v. State*, 123 Tex.Cr.R. 237, 58 S.W.2d 833 (1933). By adding the allegation that the name of the dangerous drug is sinequan does not cure the insufficiency, because sinequan is not listed by name in the Dangerous Drug Act; therefore, it is necessary to allege facts showing why sinequan is a dangerous drug. An indictment should allege all that the State is required to prove. Art. 21.03, V.A.C.C.P., and see *Benoit v. State*, 561 S.W.2d 810 (Tex.Cr.App.1977).

 Drugs which bear a legend: "Caution: federal law prohibits dispensing without a prescription" are dangerous drugs. Art. 4476–14, Sec. 2(a)(3), V.A.C.S. Assuming as the dissenting opinion states that sinequan is a dangerous drug because it bears that legend, it would be necessary for the State to prove that it was a dangerous drug because it bears that legend. Since an indictment should allege all that the State is required to prove, Art. 21.03, V.A.C.C.P., and *Benoit v. State*, supra, it would be essential for the State to allege that sinequan is a dangerous drug because it bears the legend: "Caution: federal law prohibits dispensing without a prescription." The indictment fails to allege an essential element of the offense, because it fails to allege why sinequan is a dangerous drug. The relief sought must be granted.

It is so ordered.

ROBERTS, Judge, concurring.

I concur with the opinions of Judges Dally and Clinton. I write in response to the

dissenting opinion, so that readers may not be led astray by two of its assertions.

The dissenting opinion asserts that an allegation that a drug is prohibited to be dispensed without a prescription is equivalent in meaning to an allegation that a drug bears the federal legend. This is incorrect, for some drugs which do not bear the federal legend are prohibited by our state law from being dispensed without a prescription. See Sections 2.07(b)(1) & (2) and 3.08(d) of the Texas Controlled Substances Act (V.T.R.C.S.A., Article 4476–15); 21 Code of Federal Regulations, Section 329.-20(a)(3) & (4); 21 United States Code, Section 353(b)(3).

A reader also might assume that the certification of Jerome A. Halperin, discussed in the dissenting opinion, is evidence in the record of this case. It is not. A dissenting judge procured this affidavit after the habeas corpus transcript had been transmitted to this Court. The State did not offer any proof that sinequan bears the federal legend, and this fact (if it is true) does not appear in the record or in the law. The responsibility for fact-finding in post-conviction habeas corpus cases is cast on the convicting court because original proceedings in this Court are virtually ineffective for providing such fact-finding proceedings. *Ex parte Young,* 418 S.W.2d 824, 826 (Tex. Cr.App.1967). We permit original proceedings only in extraordinary, rare cases. *Ex parte Sheppard,* 548 S.W.2d 414 (Tex.Cr. App.1977); *Ex parte Norvell,* 528 S.W.2d 129 (Tex.Cr.App.1975). The dissent has failed to persuade the court that the need to remedy the perceived failings of the prosecution is sufficient justification for this extraordinary attempt to conduct a fact-finding proceeding in this Court. The court was correct in rejecting this tactic, and I wish to make a public record of that.

PHILLIPS, J., joins in this opinion.

CLINTON, Judge, concurring.

I agree generally with the majority opinion and in the result it reaches.[1] However, since my approach is somewhat different, I take this opportunity to outline it briefly.

This Court may justifiably attribute to the Legislature awareness of the State and Federal constitutional requirement that to be valid and enforceable its statute must not be so broad or vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application," and, also, of the sound reasons that support the rule:

"Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act according-ly. Vague laws may trap the innocent by not providing fair warning. [Footnote omitted.] Second, if arbitrary and discriminatory enforcement is to be prevent-ed, laws must provide explicit standards to those who apply them. A vague law impermissibly delegates basic policy mat-ters to policemen, judges,. and juries for resolution on ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford,* 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222 (1972).

When it enacted the Dangerous Drug Act, Article 726d, V.A.P.C., 1925, as amended, and in revising it in 1973 and transferring the revision to the civil statutes as Article 4476–14, V.A.C.S., the Legislature expressly declared its policy and intent to be, *inter alia,* "to complement and supplement the Laws and Regulations of the Congress of the United States and the appropriate agencies of the Federal Government affecting such handling, sale, and distribution" of dangerous drugs. Because we all

---

1. As indicated in footnote 2 of my dissenting opinion on State's motion for rehearing in *Minix v. State,* 579 S.W.2d 466 (Tex.Cr.App.1979), today I do not read and would not apply literal-ly the admonitory language of Article 21.03, V.A.C.C.P. to test sufficiency of a charging instrument.

know, the Legislature knew and appreciated that applicable regulations promulgated by appropriate agencies of the federal government are so elusive and difficult to bring to hand, in complementing and supplementing the federal regulations it obviously chose to avoid the vagueness of a category of drugs that are prohibited by federal law from being dispensed without a prescription and opted instead for notice to a person of common intelligence what is manifested by federal law—the legend "Caution: federal law prohibits dispensing without prescription." [2]

In this fashion, I am confident, the Legislature itself adopted as the means of stating an offense relating to a drug not otherwise described in the act, that it bear the legend just quoted. Failure of the indictment to set forth that prescribed identifying element of the offense renders the indictment void because an offense denounced by state law is not alleged. Compare *Loya v. State,* 571 S.W.2d 943 (Tex.Cr.App.1978).

Petitioner is, therefore, entitled to the relief he seeks and I join the Court in granting it.

PHILLIPS, J., concurs.

DOUGLAS, Judge, dissenting.

The majority grants relief by holding that the indictment is fundamentally defective.

The pertinent part of the indictment alleges that Charles, on or about August 21, 1976, did "knowingly and intentionally DE-

LIVER A DANGEROUS DRUG, NAMELY: SINEQUAM, A DRUG PROHIBITED TO BE DISPENSED WITHOUT A PRESCRIPTION TO THOMAS CONNOLLY: . . ." Appellant first contends that his conviction cannot stand because federal law does not prohibit dispensing the drug without a prescription. *Benoit v. State,* 561 S.W.2d 810 (Tex.Cr.App.1977), and *Jackson v. State,* 518 S.W.2d 371 (Tex.Cr.App.1975), are cited in support of this contention. Appellant's second contention is that the indictment, while alleging that the drug is "PROHIBITED TO BE DISPENSED WITHOUT A PRESCRIPTION," is defective because it failed to allege that it was a drug which bears the legend: Caution: federal law prohibits dispensing without prescription.

The drug is misspelled in the indictment as "SINEQUAM." The correct spelling of the drug is "sinequan." Charles does not appear to have been misled by the typographical error since the indictment is attacked for the first time by post-conviction habeas corpus. In *Lute v. State,* 166 Tex.Cr.R. 357, 314 S.W.2d 98 (1958), a conviction for possession of heroin was upheld even though the drug was spelled "Herion" in the indictment.

Art. 4476–14, Sec. 2(a), Vernon's Ann.Civ.St.,[1] defines the term "dangerous drug." One of those definitions is "[a]ny drug or device which bears the legend: Caution: federal law prohibits dispensing without prescription."

> (2) Procaine, its salts, derivatives, or compounds or mixtures thereof except ointments and creams for topical application containing not more than two and one-half percent (2½%) strength.
> (3) *Any drug or device which bears the legend: Caution: federal law prohibits dispensing without prescription,* or the legend: Caution: federal law restricts this drug to use by or on the order of a licensed veterinarian.
> (4) Phendimetrazine, its salts, derivatives, or compounds or mixtures thereof.
> (5) Pentazocine, its salts, derivatives, or compounds or mixtures thereof." (Emphasis supplied).

---

2. Wisdom of the legislative choice is demonstrated by necessity for the dissenting opinion to resort to an affidavit to determine that sinequan is regarded by the Department of Health, Education and Welfare, Public Health Service, Food and Drug Administration, as a prescription drug.

1. That statute provides:
 "The term 'dangerous drug' means any drug or device that is not included in Schedules I through V of the Texas Controlled Substances Act and that is unsafe for self-medication, and includes the following:
 (1) Tranquilizers.

21 U.S.C. § 353(b)(1),[2] provides for drugs that may be dispensed only upon prescription. Moreover, 21 U.S.C., § 353(b)(4)[3] requires prescription drugs to bear the legend "Caution: Federal law prohibits dispensing without prescription." Thus, the allegation in an indictment that "sinequan" is "A DRUG PROHIBITED TO BE DISPENSED WITHOUT A PRESCRIPTION" is equivalent[4] to alleging that "sinequan" is a drug "which bears the legend: Caution: federal law prohibits dispensing without prescription." Appellant's first contention should be overruled.

The Federal Food and Drug Administration (FDA) of the Department of Health, Education, and Welfare (HEW) is the agency responsible for determining what drugs may be dispensed only upon prescription under the Federal Food, Drug, and Cosmetics Act (FFDCA), 21 U.S.C. § 301, et seq.[5] Jerome A. Halperin, Deputy Director, Bureau of Drugs, FDA, certifies that sinequan became an approved drug on September 23, 1969. The approval of that date "stipulates that the drug must be labeled as a prescription drug, bearing on the label the statement 'Caution: Federal law prohibits dispensing without prescription,' . . ." Halperin further certifies that from September 23, 1969, until the present, sinequan has been restricted to prescription sale. Thus, sinequan was a prescription drug on the date of the offense alleged in the indictment and was required to bear the legend: "Caution: federal law prohibits dispensing without prescription." The second contention should be overruled.

The indictment charges an offense under the statute. It charges that the dangerous drug sinequan, "A drug prohibited to be dispensed without a prescription", was delivered to Connolly.

It is not necessary to set out every definition in a statute verbatim. For example, if an indictment alleges that an accused used a firearm in the course of committing a robbery or murder, it does not have to set out the definition of a firearm.

The indictment in the present case left out the words "federal law." There is no dispute that the drug was prohibited. Charles did not claim lack of notice because he pled guilty to the offense and did not appeal the conviction. This is a waste of judicial time and expense to have another trial in a case like this.

The writer of the concurring opinion apparently believes that a judge should not undertake to find out what the federal law provides—in this case, the drugs which the

**2.** That statute provides:

"A drug intended for use by man which—
(A) is a habit-forming drug to which section 352(d) of this title applies; or
(B) because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or
(C) is limited by an approved application under section 355 of this title to use under the professional supervision of a practitioner licensed by law to administer such drug, shall be dispensed only (i) upon a written prescription of a practitioner licensed by law to administer such drug, or (ii) upon an oral prescription of such practitioner which is reduced promptly to writing and filed by the pharmacist, or (iii) by refilling any such written or oral prescription if such refilling is authorized by the prescriber either in the original prescription or by oral order which is reduced promptly to writing and filed by the pharmacist. The act of dispensing a drug contrary to the provisions of this paragraph shall be deemed to be an act which results in the drug being misbranded while held for sale."

**3.** That statute provides:

"A drug which is subject to paragraph (1) of this subsection shall be deemed to be misbranded if at any time prior to dispensing its label fails to bear the statement 'Caution: Federal law prohibits dispensing without prescription'. A drug to which paragraph (1) of this subsection does not apply shall be deemed to be misbranded if at any time prior to dispensing its label bears the caution statement quoted in the preceding sentence."

**4.** Article 21.17, V.A.C.C.P., provides:

"Words used in a statute to define an offense need not be strictly pursued in the indictment; it is sufficient to use other words conveying the same meaning, or which include the sense of the statutory words."

**5.** For a detailed discussion of FDA's authority in this regard, see *National Nutritional Foods Ass'n v. Weinberger*, 512 F.2d 688 (2d Cir. 1975).

federal law requires to bear the legend, "Caution: federal law prohibits dispensing without prescription. . . ." That information was not furnished by either party in the habeas corpus hearing. Would the writer of the concurring opinion hold that judges could neither ascertain nor brief the federal law upon a subject unless it was contained in the briefs of those interested in the case? If such were true, court decisions would do justice in fewer cases, and hearings and trials would be more like a game without regard to what the law provides.

In many cases this Court by authority of the Constitution has ascertained the facts by affidavits to make a decision in a habeas corpus matter.

Article 5, Section 5 of the Texas Constitution provides among other things that "[t]he Court of Criminal Appeals shall have power upon affidavit or otherwise to ascertain such matters of fact as may be necessary to the exercise of its jurisdiction." If the Court can ascertain matters of fact by affidavit, then with stronger reason this Court can ascertain a matter of law in any way that it deems proper. Is the better practice to learn and apply the law or ignore it?

The relief sought should be denied.

W. C. DAVIS, J., joins in this dissent.