Stanley CROWL, Appellant,

v.

The STATE of Texas, Appellee.

No. 64101.

Court of Criminal Appeals of Texas,
Panel No. 3.

July 2, 1980.

Rehearing Denied Feb. 18, 1981.

Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, TOM G. DAVIS and CLINTON, JJ.

OPINION

CLINTON, Judge.

Appellant entered a plea of not guilty before a jury to the offense of possession of a controlled substance, namely cocaine. Article 4476–15, V.A.C.S. He was convicted and the jury assessed punishment at imprisonment for 10 years and a fine of $10,000 (probated).

The record is before us without a transcription of the court reporter's notes or bill of exception. No brief was filed in the trial court in appellant's behalf pursuant to Article 40.09, § 9, V.A.C.C.P.

The record reflects that appellant is represented by retained counsel, although a pauper's oath was filed on March 5, 1979, seeking a free transcription of the court reporter's notes at State expense. The record was approved without objection on June 21, 1979. The record further contains a statement dated July 24, 1979, wherein appellant's retained counsel acknowledges receipt of the statement of facts from the district clerk. It appears that the failure of the record to contain the statement of facts is due to the affirmative conduct of appellant's retained counsel.

Our review of the transcript, however, reveals a matter which we proceed to review in the interest of justice. See Article 40.09, § 13, V.A.C.C.P.

The indictment returned against appellant, omitting the formal portions, alleged that he,

On or about the 11th day of May [1978] ... did then and there unlawfully knowingly and intentionally possess a controlled substance, namely, cocaine,

.    .    .    .    .

At the time appellant is alleged to have committed the offense charged, that offense was proscribed by Article 4476–15, § 4.04, V.A.C.S. which provided in germane portion:

(a) Except as authorized by this Act, a person commits an offense if he knowingly or intelligently possesses a controlled substance [1] unless the substance was

---

1. "'Controlled substance' means a drug, substance, or immediate precursor listed in Schedules I through V and Penalty Groups 1 through 4 of this Act." Article 4476–15, supra, § 1.02(5).

obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice.

(b) An offense under subsection (a) of this section with respect to

(1) a controlled substance in Penalty Group 1 is a felony of the second degree;

. . . . .

Likewise, at the time of the commission of the alleged offense herein, Section 4.02, supra, provided in relevant part:

(a) For the purpose of establishing criminal penalties for violation of a provision of this Act, there are established the following groups of controlled substances.

(b) Penalty Group 1. Penalty Group 1 shall include the following controlled substances:

\* \* \* \* \* \*

(3) Any of the following substances except those narcotic drugs listed in another group, however produced:

\* \* \* \* \* \*

(D) *Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances,* but not including decocainized coca leaves or extractions which do not contain cocaine or ecgonine.[2]

In *Ex parte Wilson,* 588 S.W.2d 905 (Tex. Cr.App.1979), this Court overruled a line of cases which had held that the allegation by indictment of the possession or sale of a

drug not enumerated in a statutory proscription, was nevertheless fundamentally sufficient to allege an offense, so long as adequate proof was adduced to show that the drug alleged was in fact equivalent to or included within, the drug named and specifically enumerated by statute.

In so overruling *McClanahan v. State,* 394 S.W.2d 499 (Tex.Cr.App.1965); *Henley v. State,* 387 S.W.2d 877 (Tex.Cr.App.1964); and *Taylor v. State,* 172 Tex.Cr.R. 461, 358 S.W.2d 124 (1962), this Court held in *Ex parte Wilson,* supra, at 908, 909:

To state the rule generally, we hold that in a prosecution under the Controlled Substances Act for the manufacture, delivery, or possession of a substance *not specifically named in a penalty group* but which is *otherwise described in a penalty group* (for example, an isomer of methamphetamine), *such description is an essential element of the offense* which must be alleged in the indictment in order to state an offense.

At the time of the commission of the offense alleged against appellant, "cocaine" was not "specifically named in a penalty group" as it has been since the 1979 amendment. [See n. 2, *ante*] Instead, "cocaine" was contained in the penalty group by virtue of its falling within some "other description" among which are the following: "any salt, compound, derivative, or preparation of *coca leaves*" or "any salt, compound, derivative, or preparation *thereof* which is chemically equivalent or identical with any of these substances."[3]

As such, the indictment in this cause "does not allege *why* [cocaine], a substance

2. Effective August 27, 1979, § 4.02(b) was amended to provide in this regard:

\* \* \* \* \* \*

(3)(D) *Cocaine,* including its salts, isomers (whether optical, position, or geometric), and salts of such isomers, *coca leaves* and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized

coca leaves or extractions which do not contain cocaine or ecgonine.
(All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

3. Indeed, we are not informed of whether "cocaine" is a salt, compound, preparation or derivative of *coca leaves,* or whether it is in turn a compound, salt, derivative or preparation of a *salt, compound, derivative or preparation* of coca leaves.

not listed by name in a penalty group, is a controlled substance. Therefore, the indictment fails to allege an essential element of the offense and is fundamentally defective." *Ex parte Wilson*, supra, at 909.

The judgment of conviction is reversed, and the indictment is ordered dismissed.

## DISSENTING OPINION TO THE OVERRULING OF STATE'S MOTION FOR REHEARING WITHOUT WRITTEN OPINION

McCORMICK, Judge.

Today I find myself once again amazed, as I am sure many judges and trial attorneys will be, at the ease and ability of this Court to abandon what appeared to be established principles of law in favor of a snowballing doctrine known as fundamental error. On February 5, 1975, this Court, without the necessity of citation of authority held:

"The plain language of this section leaves no doubt but that it was the legislative intent that *any* derivative of coca leaves, including cocaine, be included in penalty group one." *Elam v. State*, 518 S.W.2d 367 (Tex.Cr.App.1975).

Not only does the Court today chip another block from the foundation of stare decisis, it also demonstrates its ability to selectively read the statutes of this State with an eye toward hypertechnicality and further abandonment of any common sense approach to criminal pleadings in the State of Texas.

The instant case comes to us on appeal from a conviction for possession of a controlled substance, namely, cocaine. After finding appellant guilty, the jury assessed punishment at ten years, probated, and a fine of $10,000. On original submission, the panel found appellant's indictment to be fundamentally defective, reversed the conviction, and ordered the indictment dismissed.

Omitting the formal parts, the indictment alleged that the appellant did:

" . . . knowingly and intentionally possess a controlled substance, namely, cocaine, . . . "

Relying on *Ex parte Wilson*, 588 S.W.2d 905 (Tex.Cr.App.1979), the panel held that since cocaine was not specifically mentioned in any penalty group the indictment was fundamentally defective for failing to allege why cocaine is a controlled substance. Prior to its amendment on August 27, 1979, Article 4476–15, Section 4.02(b)(3)(D), V.A.C.S., provided:

"Coca leaves and any salt, compound, derivative or preparation of coca leaves and any salt, compound, derivative or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions which do not contain cocaine or ecgonine."

The instant prosecution was for an offense alleged to have occurred while the above quoted language was still in existence.

Following the unanimous opinion in *Elam v. State*, supra, which left no doubt that cocaine was a derivative of coca leaves, a panel of this Court again, in 1978, addressed the identical issue presented here. In *Bishop v. State*, 568 S.W.2d 136 (Tex.Cr.App. 1978), it was contended that an indictment for delivery of cocaine was fundamentally defective in that it failed to allege an offense because the Controlled Substances Act did not specifically name cocaine as a controlled substance. The indictment in *Bishop* alleged:

"Bobby Joe Bishop, hereinafter referred as the Defendant, heretofore on or about February 13, 1976, did then and there unlawfully, knowingly and intentionally deliver to John Tanner a controlled substance, *namely cocaine.*" (Emphasis supplied)

In overruling the appellant's contention in *Bishop*, it was held that:

"Where this definition specifically includes any compound or derivative of coca leaves but excludes decocainized coca leaves or extractions which do not contain cocaine there is a necessary implication in the definition that cocaine is a derivative of or preparation from, coca leaves. This inference is strengthened by

the prior provision of Article 725b, V.A. P.C. (1925) which was the predecessor of the Texas Controlled Substances Act where coca leaves were defined as including 'cocaine and any compound, manufacture, salt, derivative, mixture, or preparation of coca leaves, except derivatives of coca leaves which do not contain cocaine...' " *Bishop v. State*, supra, at 137.

The Court in both *Elam* and *Bishop* recognized that it was the intent of the Legislature to include cocaine within the penalty group I proscriptions of the Controlled Substances Act. In overruling these two decisions, the validity of which had not heretofore been doubted, the majority has misapplied the holding of *Ex parte Wilson*, supra. There the indictment alleged possession of a "controlled substance, namely: Phentermine." Phentermine was not specifically listed as a prohibited drug: nor, could the Court take judicial notice that phentermine was an isomer of methamphetamine. Whether phentermine is an isomer of methamphetamine depends on evidentiary proof. Thus, the Court held that the indictment should allege why possession of a non-listed drug was prohibited by the Act. See also *Ex parte Charles*, 582 S.W.2d 836 (Tex.Cr. App.1979).

Undoubtedly, one cannot look at the statute which forbids isomers of methamphetamine and judicially construe it to include phentermine. Thus, for phentermine to be equivalent to an isomer of methamphetamine one look outside the statute itself to extrinsic evidence. Cocaine is different. One can look to the statute, as the Court did in *Elam* and *Bishop*, without resort to extrinsic evidence and say, as a matter of law, judicial notice, and statutory construction that cocaine is prohibited.

In addition to holding that former Section 4.02(b)(3)(D) of Article 4476–15, V.A. C.S., no longer by implication defined cocaine as a derivative or preparation from coca leaves, the majority ignores the provisions of Article 21.18, V.A.C.C.P., which provides:

"Presumptions of law and matters of which judicial notice is taken (among which are included the authority and duties of all officers elected or appointed under the General Laws of this State) need not be stated in the indictment."

Judicial notice has been said to be a doctrine of common sense whereby facts that are so notorious or their existence so easily ascertainable that proof is not required. 1 Ray, *Law of Evidence*, 3rd Ed., Section 151 (1980). Although I feel it should be unnecessary to the disposition of this matter in light of the Court's previous holdings on the issue, I would also hold that this Court can take judicial notice of the fact that cocaine is included in Section 4.02(b)(3)(D) and that such allegation is sufficient.

In *United States v. Umentum*, 401 F.Supp. 746, 748 (E.D.Wis.1975), affirmed 547 F.2d 987 (7 Cir.), cert. denied 430 U.S. 983, 97 S.Ct. 1677, 52 L.Ed.2d 376, it is stated:

"B. Failure to list cocaine in Schedule II

"The defendants Umentum and Piechota have moved to dismiss counts I and II of the indictment for failure to allege an offense. Each of those counts refers to 'cocaine, a Schedule II narcotic drug controlled substance.' The defendants argue that cocaine does not appear in 21 U.S.C. Section 812(c) Schedule II, which reads in part:

" '(a)(4) Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.'

"I take judicial notice that cocaine is a derivative of coca leaves. See *United States v. Amidzich*, 396 F.Supp. 1140 (E.D.Wis.1975), and *United States v. Orzechowski*, 75–CR–83 (E.D.Wis. August 21, 1975). See also Webster's Third New International Dictionary, at 434 (G & C Merriam Co. 1966); 4 Gray's Attorneys' Textbook of Medicine, Ch. 132, at 132–181 (3d ed. 1974). The court of appeals for

the seventh circuit has held that in a similar situation a court should take judicial notice that heroin in a 'salt, compound, derivative, or preparation of opium.' *United States v. Chiarelli*, 192 F.2d 528 (7th Cir. 1951), cert. denied 342 U.S. 913, 72 S.Ct. 359, 96 L.Ed. 683. Accordingly, the defendants' motion to dismiss counts I and II will be denied."

Other federal courts have assumed that cocaine was within the prohibition of "Coca leaves", etc. found in 21 U.S.C. Section 812(c), Schedule II, (a)(4). See *United States v. Harper*, 530 F.2d 828, 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed. 80; *United States v. Wheaton,* 557 F.2d 275 (1 Cir. 1977); *United States v. Solow*, 574 F.2d 1318 (5 Cir. 1978); *United States v. Lane*, 574 F.2d 1019 (10 Cir. 1978), cert. denied 439 U.S. 867, 99 S.Ct. 193, 58 L.Ed.2d 177; *United States v. Vila*, 599 F.2d 21 (2 Cir. 1979); *United States v. Stieren*, 608 F.2d 1135 (8 Cir. 1979). See also *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), especially footnote one where it is stated:

"Heroin, a derivative of opium, and cocaine, a product of coca leaves, are within the meaning of the term 'narcotic drug' as used in 21 U.S.C. Section 174."

Because of the abandonment without reason of this Court's previous holdings, I dissent to the overruling of the State's motion for rehearing.