Charles Lee WATSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 816–94.

Court of Criminal Appeals of Texas, En Banc.

June 7, 1995.

Clinton, J., filed concurring opinion with which Baird and Meyers, JJ., joined.

Overstreet and Maloney, JJ., concurred in the result.

J. Rex Barnett, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Betty Marshall, Charles M. Mallin, Anne E. Swenson and Greg Miller, Asst. Dist. Attys. Fort Worth, Robert Huttash, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MANSFIELD, Judge.

Appellant, Charles Lee Watson, was convicted by a jury on March 24, 1993, of the following two offenses:

(1) possession with intent to deliver a controlled substance, heroin, and

(2) possession with intent to deliver a controlled substance, cocaine.

The jury assessed punishment at imprisonment for 65 years for each offense, with the sentences ordered to run concurrently pursuant to Texas Health and Safety Code § 481.132(d) (1992). The convictions and sentences were affirmed by the court of appeals. *Watson v. State*, 877 S.W.2d 826 (Tex. App.—Fort Worth 1994).

This Court granted appellant's petition for discretionary review to consider two grounds raised by appellant:

(1) Whether separate convictions for possession of a controlled substance with intent to deliver both heroin and cocaine resulting from a single incident of possession violate appellant's protection against double jeopardy.

(2) Whether separate convictions for two counts in a single indictment violate the prohibition against multiple convictions arising out of a single charging instrument.

## I. Appellant's Double Jeopardy Protection Was Not Violated Because He was Charged With and Convicted of Two Separate Offenses

Appellant was charged with possession with intent to deliver two different drugs, heroin and cocaine. In order to meet its burden of proof beyond a reasonable doubt, the State was required to present evidence that appellant possessed *both* heroin and cocaine. A chemical analysis of the capsules seized from appellant showed some tested positive for cocaine and others tested positive for heroin.

The double jeopardy clause of the Fifth Amendment protects against: (1) a second prosecution for the same offense after conviction; (2) a second prosecution for the same offense after acquittal; and (3) multiple punishments for the same offense. *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Appellant claims that he is, in effect, being punished twice for the same offense.

*Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), established the test to be applied to appellant's claim. The test is whether each offense requires proof of an element that the other offense (or offenses) does not. See also *United States v. Dixon*, —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). It is quite clear that this test is met here. The charge of possession of heroin requires proof of possession of heroin. The State offered evidence of a chemical analysis that some of the capsules tested positive for heroin. Likewise, the charge of possession of cocaine requires proof of possession of cocaine, and the State offered evidence of a chemical analysis that some of the capsules tested positive for cocaine. Different proof is required for possession of cocaine than for possession of heroin, and that proof is provided in this case.

*Blockburger* also requires that the Legislature intended that each violation be a separate offense. *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764

(1985); *Cervantes v. State*, 815 S.W.2d 569 (Tex.Cr.App.1991), cert. denied, 502 U.S. 1110, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992).

The Texas Health and Safety Code classifies heroin and cocaine as Penalty Group 1 substances for the purpose of establishing criminal penalties for violations of the Texas Controlled Substances Act. Texas Health and Safety Code § 481.112 (1992) provides: "Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally manufactures, delivers or possesses with intent to manufacture or deliver a controlled substance listed in Penalty Group 1."

■ Appellant argues, in effect, that the Legislature intended to make the penalty group, rather than the individual controlled substance, an essential element of the offense. This interpretation would mean an individual could possess ten different substances described in Penalty Group 1 and be chargeable with only one offense, yet he could be charged with two offenses if he possessed one Penalty Group 1 substance and one Penalty Group 2 substance. Appellant offers no legislative history or other authority in support of his position. The Legislature, in writing the Texas Health and Safety Code, Subchapter D, classified controlled substances into four penalty groups for the purpose of establishing criminal penalties for possession, manufacture, or sale of various controlled substances. Tex.Health & Safety Code, §§ 481.102–481.105. Paragraph (a) of §§ 481.112 through 481.118 makes it clear that it is an offense to possess, manufacture or deliver a controlled substance listed in the particular penalty group. This language cannot reasonably be construed, as appellant claims, to make possession, sale or delivery of two or more controlled substances within the same penalty group one offense. We hold that the Legislature intended to make possession of *each* individual substance within the same penalty group a separate and distinct offense.

Appellant cites *Ex Parte Crosby*, 703 S.W.2d 683 (Tex.Cr.App.1986), and *Cook v. State*, 840 S.W.2d 384 (Tex.Cr.App.1992), to support his contention that he is being punished twice for the same offense. In *Cook* and in *Crosby*, this Court held that there could be only one conviction for aggravated robbery, regardless of the number of victims of the assaultive conduct, because there was only one theft. "There is no indication that the Legislature intended multiple punishments under the aggravated robbery statute for conduct involving more than one victim where there is only one theft." *Cook* at 389. In the present case, appellant was convicted of *two* distinct possession offenses, not one. This situation is nothing like *Cook* or *Crosby*, where the State improperly used one theft to convict each defendant of multiple aggravated robberies.

Thus, appellant's multiple punishments do not violate the Fifth Amendment's protection against double jeopardy because each punishment is for a separate and distinct offense.[1] Appellant's ground for review number one is overruled.

## II. Joinder of the Two Offenses in the Same Charging Instrument Was Proper Under Texas Health and Safety Code § 481.132 (1992)

"A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode. If a single criminal action is based on more than one charging instrument within the jurisdiction of the trial court, not later than the 30th day before the date of the trial, the state shall file written notice of the action." Tex.Health & Safety Code § 481.132(b) (1992).

"In this section, 'criminal episode' means the commission of two or more offenses under this chapter under the following circumstances:

(1) the offenses are committed pursuant to the same transaction...." Tex.Health & Safety Code § 481.132(a) (1992).

---

1. Appellant also claims that his protection against double jeopardy under Article I, § 14, of the Texas Constitution was violated by the treatment of possession of heroin and cocaine as two separate offenses. He fails, however, to cite any authority that our state constitution provides greater protection against double jeopardy than the federal constitution, so no analysis of this claim is necessary.

In the present case, appellant was observed by the police doing acts consistent with dealing drugs. When they arrested him, they seized a plastic bag containing capsules, some of which tested positive for heroin and others of which tested positive for cocaine. Given these facts, both of the charged offenses arose out of the same "criminal episode" as defined in section 481.132(a) of the Texas Health and Safety Code. Therefore, joinder of the two offenses in a single indictment was proper under Texas Health and Safety Code § 481.132(b) (1992).

Appellant argues, however, that neither this section nor Article 21.24, Texas Code of Criminal Procedure, authorizes multiple convictions arising from the same indictment. It is true that the common law rule is one conviction per indictment. See *Ex parte Siller*, 686 S.W.2d 617 (Tex.Cr.App.1985). Appellant, however, fails to cite *LaPorte v. State*, 840 S.W.2d 412 (Tex.Cr.App.1992), in which this Court held: "As long as the offenses met the definition of 'criminal episode' under [Tex.Pen.Code] Section 3.01 and were tried in a single trial, multiple convictions were permissible either based upon one charging instrument or several." *LaPorte* at 413. The Legislature has decided to permit two or more violations of the Texas Health and Safety Code to be charged in one indictment as a single criminal action, provided they arise out of the same criminal episode. This allows for the efficient disposition of cases and also provides a benefit for the accused since, if he is found guilty of more than one offense, any sentences imposed must run concurrently.

Significantly, appellant failed to file any motion for severance with the trial court, pursuant to Texas Health and Safety Code § 481.132(e), alleging that joinder of the offenses would prejudice him. Having failed to do so, appellant waived his right on appeal to complain about joinder of the offenses. See *Marin v. State*, 851 S.W.2d 275 (Tex.Cr.App. 1993). Appellant's ground for review number two is overruled.

The judgment of the court of appeals is affirmed.

OVERSTREET and MALONEY, JJ., concur in the result.

CLINTON, Judge, concurring.

Subsection (a) of Section 481.112 of the Health and Safety Code provides:

"Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally manufactures, delivers, or possesses with intent to manufacture or deliver a controlled substance listed in Penalty Group 1."

In *ipse dixit*, apparently relying upon nothing more than its naked intuition, a plurality of the Court today simply announces that the language of this and other like provisions in the Health and Safety Code "cannot reasonably be construed, as appellant claims, to make possession, sale or delivery of two or more controlled substances within the same penalty group one offense." Maj. op. at 62. I suspect that the plurality has once again consulted its viscera to determine that an admittedly plausible construction of statutory language, because unsavory, must be "absurd." Cf. *Basden & Coleman v. State*, 897 S.W.2d 319 (Tex.Cr.App.1995) (Clinton, J., dissenting) (decrying the Court's holding that plain meaning of statute is "absurd," and therefore deviating from it, merely because majority would have written a different statute). I write separately to provide some legal substance to the plurality's wholly intuitive judgment.

In a unified prosecution appellant was convicted of two instances of possession with intent to deliver a Penalty Group 1 substance, *viz:* heroin and cocaine. Thus, the jeopardy issue is not one of multiple prosecutions, but of multiple punishment. The plurality is therefore correct to treat the issue as one of legislative intent. See *Ex parte Kopecky*, 821 S.W.2d 957 (Tex.Cr.App.1992). The substantive jeopardy issue may thus be framed: How many punishments did the Legislature intend? [1]

---

1. Under the former carving doctrine, we held that the State could not prosecute more than one offense from the simultaneous possession of more than one narcotic. E.g., *Jones v. State*, 482

In assaying that legislative intent, the plurality relies uncritically on the test articulated in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). That test:

> "determine[s] when jeopardy will and will not permit multiple prosecutions where two distinct statutes are violated by the same conduct. Here, ... the issue is whether double jeopardy is violated when an accused is prosecuted more than once under the same statutory provision."

*Iglehart v. State,* 837 S.W.2d 122, 130 (Tex. Cr.App.1992) (Clinton, J., dissenting). Although *Iglehart* concerned the issue of multiple prosecutions, my observation there pertains with equal force in the context of multiple punishment. The *Blockburger* test is inapposite in deciding whether jeopardy protects against multiple punishments when an accused is prosecuted more than once in a single proceeding for simultaneous violations of the same statutory provision. See also *Ex parte Rathmell,* 717 S.W.2d 33, 35 (Tex.Cr. App.1986).

Therefore, before we may invoke *Blockburger,* we must address a threshold question: Does simultaneous possession of both heroin and cocaine amount to conduct that violates two distinct statutory provisions? If so, then *Blockburger* obviously would apply, and, given no more definitive indicium of legislative intent, we could safely conclude, as the plurality does today, that multiple punishments were intended. *Ex parte Kopecky,* supra. Or does simultaneous possession of both heroin and cocaine instead amount to, if anything, to violation of the same statutory provision, *viz:* § 481.112(a), twice? If this is the case, then, as in *Rathmell* and *Iglehart,*

the issue boils down to one of "allowable units of prosecution." Did the Legislature intend that simultaneous possession of more than one Penalty Group 1 substance be susceptible to punishment for as many of those distinct substances as are simultaneously possessed? Or did the Legislature contemplate a unitary punishment for possession of all Penalty Group 1 substances simultaneously possessed?

Section 481.112(a), penalizes possession of "*a* controlled substance listed in Penalty Group 1." [2] It is tempting to conclude from the use of the singular rather than the plural form that the Legislature meant to identify, not just one statutorily defined offense, but rather as many separate statutory offenses as there are distinct substances listed in Penalty Group 1. Multiple punishment for simultaneous possession of different substances listed in Penalty Group 1 would not violate jeopardy protections because possession of any one of the listed substances constitutes a discrete offense. By definition, each offense would require proof that the others do not. *Blockburger,* supra. Alternatively it could be argued that, even if simultaneous possession of Penalty Group 1 substances constitutes multiple violations of a single statute, thus posing the "allowable units of prosecution" problem, use of the singular form evinces a legislative intent that a defendant be punished for as many "singular" substances as he simultaneously possessed. Cf. *Ex parte Rathmell,* supra (because involuntary manslaughter statute proscribes accidental killing of "an individual" when driving drunk, accused may be prosecuted for as many "individuals" as he simultaneously killed).

S.W.2d 194 (Tex.Cr.App.1972). But in *Ex parte McWilliams,* 634 S.W.2d 815 (Tex.Cr.App.1982), the Court abandoned the carving doctrine.

> "Since that time we have continued to insist, of course, that constitutional double jeopardy protections prohibit multiple prosecutions for the same offense. However, under post-*McWilliams* jeopardy analysis, the question of what constitutes the 'same' offense, and of what are 'allowable units of prosecution,' is no longer purely a substantive jeopardy question, as it was under the carving doctrine. As the majority discerns, the question today is largely one of statutory construction. Spradling v.

State, 773 S.W.2d 553 (Tex.Cr.App.1989). * * * This Court's role now is to discern what the Legislature has provided with respect to allowable units of prosecution, if in fact it has provided anything at all."

*Iglehart v. State,* 837 S.W.2d 122, 129–130 (Tex. Cr.App.1992) (Clinton, J., dissenting). *Iglehart* involved a question of multiple prosecution, not multiple punishment, as here. But we have recognized that in the multiple punishment context too, "[t]he touchstone [of federal double jeopardy analysis] is legislative intent." *Ex parte Kopecky,* supra, at 959.

**2.** All emphasis added.

The plurality, of course, makes neither of these arguments; at least not expressly. It is just as well that the plurality does not, for each argument is wrong, and for the same reason. As I explained in *Iglehart:*

"I do not believe that legislative use of [singular versus plural forms of] language tells us anything useful, one way or the other, about legislative intent regarding allowable units of prosecution. Pursuant to V.T.C.A. Government Code, § 311.012(b), in construing the Penal Code we are to understand that "[t]he singular includes the plural and the plural includes the singular." I take this to mean simply that we are to place no particular significance on the fact that in drafting a code provision the Legislature chose to use either the singular or the plural form of a word. For example, in the context of the involuntary manslaughter statute the fact that a drunk driver causes two deaths does not absolve him of criminal liability because the statute proscribes causing the death of 'an individual.' Conversely, had the statute proscribed causing the death of 'individuals' by drunk driving, it would not be a defense to prosecution that an accused killed only one. Use of the singular rather than the plural form, or of the definite rather than an indefinite article, simply has no bearing on the question of how many units of prosecution the Legislature meant to allow."

837 S.W.2d at 131.

The same rule applies in construing the Health and Safety Code. For this reason, we cannot presume that by proscribing possession of "*a* controlled substance listed in Penalty Group 1" in Section 481.112(a) of the Health and Safety Code, the Legislature meant to create as many discrete offenses as there are substances listed. Possession at the same time of more than one of the substances listed in Penalty Group 1 may yet only constitute, in the Legislature's eyes, "an offense." Nor does the Legislature's use of the singular form, "a . . . substance," serve in any other manner to identify a legislative intent to allow as many punishments as substances simultaneously possessed.

For its part, the State argues that Section 481.112(a) identifies, not one statutorily discrete offense, but many, and that *Blockburger* is, therefore, the applicable test for determining what the Legislature intended *vis-a-vis* whether appellant may be punished for simultaneous possession of more than one Penalty Group 1 substance. For this proposition the State cites two cases, and there are others, in which we have essentially held that failure to allege the particular controlled substance possessed rendered an indictment fundamentally defective. That an indictment fails to state a complete offense absent allegation of the particular controlled substance, the State posits, indicates that possession of each discrete substance constitutes a separately defined statutory offense. I agree.

*Baker v. State,* 123 Tex.Cr. 209, 58 S.W.2d 534 (1933) involved an appeal from a prosecution under Acts 1931, 42nd Leg., ch. 97, p. 154, eff. April 30, 1931. That statute made it an offense, *inter alia,* to possess "any narcotic drug." "Narcotic drug" was defined elsewhere in the statute to "include opium, morphine, heroin, cocoa leaves, cocaine, marijuana, or any compound, manufacture, salt, derivative, or preparation thereof." The indictment in *Baker* alleged that he possessed "a narcotic drug," but did not name it. While we reversed the conviction and dismissed the indictment in *Baker* on account of this deficiency, the opinion of the Court does not expressly indicate that this defect rendered the indictment fundamentally defective. See also *Horton v. State,* 123 Tex.Cr. 237, 58 S.W.2d 833 (1933). But in *Hart v. State,* 396 S.W.2d 873 (Tex.Cr.App.1965), we noted that no objection had been made at the trial level in *Baker* to preserve that error for appeal. *Baker* thus necessarily supports the proposition that failure to specify which of the narcotic drugs listed in the statute the defendant allegedly possessed rendered the indictment fundamentally defective.

Following suit, in *Hart* we reversed a prosecution brought under former Article 726d, (V.A.P.C.1925), the predecessor to current Chapter 483 of the Health and Safety Code, because the information alleged possession of a dangerous drug, but did not specify which of the "many drugs . . . enumerated by defi-

nition as being dangerous drugs." *Id.,* at 874. Though Hart had made no objection at trial, we sustained his complaint on appeal that the information was fundamentally defective. On the strength of *Hart* we reversed another conviction and dismissed the information in *Crockett v. State,* 511 S.W.2d 519 (Tex.Cr.App.1974). The information failed to allege a named substance, Talwin, was a dangerous drug by virtue of the fact that it was labeled, "Caution: federal law prohibits dispensing without a prescription ..." Absent such an allegation, we observed, the information "fail[ed] to allege ... a criminal offense." *Id.,* at 520.

Thus it appears that this Court has long considered it an essential part of pleading an offense, under predecessors to Chapters 481 (Texas Controlled Substances Act) and 483 (Dangerous Drugs) of the Health and Safety Code, that the charging instrument set out which among the many enumerated controlled substances or dangerous drugs the accused delivered or possessed. This suggests we have understood the particular substance or drug to be an element of the offense, which in turn suggests delivery or possession of each individually listed substance or drug constitutes a separate and discrete offense. In subsequent cases the trend has continued.

In *Ex parte Charles,* 582 S.W.2d 836 (Tex. Cr.App.1979), we granted relief in a collateral attack, overturning a conviction for delivery of a dangerous drug under Article 4476–14, V.A.C.S., a successor to Article 726d, and another predecessor to Chapter 483 of the Health and Safety Code. Though the indictment in *Charles* named a substance, sinequam, it also failed to allege that sinequam was a dangerous drug because labeled, "Caution: federal law prohibits dispensing without a prescription ..." For this reason we held the indictment "fail[ed] to allege an essential element of the offense, because it fail[ed] to allege why sinequam is a dangerous drug." *Id.,* at 837. Along the way,

citing to *Baker* and *Horton,* both supra, we observed: "The indictment would not be sufficient if it merely alleged without naming the drug that [the defendant] knowingly and intentionally delivered ... a dangerous drug which could not be dispensed without a prescription." *Id.*

We granted relief in another collateral attack alleging a fundamentally defective indictment in *Ex parte Wilson,* 588 S.W.2d 905 (Tex.Cr.App.1979). The indictment purported to charge Wilson under the Controlled Substances Act for the offense of possession of phentermine. Phentermine is an isomer of methamphetamine. Methamphetamine, including its salts, isomers, and salts of isomers, was listed in Penalty Group 1. But phentermine, *per se,* was not listed among the penalty groups in the Controlled Substances Act. We held that, absent an allegation that phentermine was an isomer of methamphetamine, the indictment did not allege every essential element of the offense. *Id.,* at 909–909. For authority we cited, *inter alia, Crockett* and *Charles,* both supra. In the wake of *Wilson* we decided *Crowl v. State,* 611 S.W.2d 59 (Tex.Cr.App.1980). The indictment in *Crowl* alleged possession of "cocaine." At the time the offense was committed, however, although "any salt, compound, derivative or preparation of coca leaves" was listed in Penalty Group 1, no penalty group listed "cocaine." Without an allegation why cocaine was a controlled substance, we held, the indictment failed to allege every constituent element of the offense.

Thus we have held that a particular controlled substance or dangerous drug must be named in the indictment in order for it to state a complete offense. That we regard the particular substance or drug to be an element of the offense can only mean that we also regard possession or delivery of each distinctly listed substance or drug to constitute a separate statutorily defined offense from possession or delivery of every other distinctly listed substance or drug.[3] We pre-

---

3. After our opinion in *Studer v. State,* 799 S.W.2d 263 (Tex.Cr.App.1990), failure of an indictment to allege an element of an offense does not amount to fundamental error, at least not to the extent the error could be raised for the first time on appeal or on collateral attack. But this does not alter the fact, in the present context, that we consider pleading a particular controlled substance as essential to allege an offense. It just means that failure to complain of the defective

sume the Legislature is cognizant of the way this Court has construed its enactments. Yet the Legislature has done nothing to indicate disapproval of our past pronouncements that it meant to promulgate not one offense, but many. Under the circumstances, we can safely assume we have correctly construed the legislative intent. *State v. Hall,* 829 S.W.2d 184, 187 (Tex.Cr.App.1992); *Lockhart v. State,* 150 Tex.Cr.R. 230, at 235, 200 S.W.2d 164, at 167–68 (1947) (opinion on rehearing).

By this reckoning, Section 481.112(a) defines not just one offense of possession of any number of Penalty Group 1 substances, but as many offenses as there are substances listed in that penalty group. The issue in this cause is not, therefore, whether simultaneous possession of cocaine and heroin amounts to violation of the same statutory provision twice. We are not confronted with the *Rathmell/Iglehart* problem of "allowable units of prosecution." Instead, simultaneous possession of cocaine and heroin amounts to violation of more than one statutory offense. *Blockburger* is therefore an appropriate test for gauging legislative intent for purposes of double jeopardy analysis. Indulging the *Blockburger* presumption, we may conclude, much as the plurality does today, that, because proof of possession of cocaine is distinct from proof of possession of heroin, appellant may indeed be punished for both offenses, though he possessed the substances at the same time. Maj. op. at 61.

Having thus substantiated the plurality's gut reaction, I join the judgment of the Court, but not the plurality's opinion.

BAIRD and MEYERS, JJ., join this opinion.

pleading at the trial level will bar any relief later on. It remains clear after *Studer* that we regard possession or delivery of each individual substance discretely listed in the Penalty Groups to be a separate and distinct statutory offense.