

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-87,190-02

## EX PARTE ANDREW MELCHOR SAUCEDO, Applicant

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS
## CAUSE NO. 1415435-A IN THE 262ND DISTRICT COURT
## FROM HARRIS COUNTY

NEWELL, J. filed a concurring opinion in which RICHARDSON, WALKER and SLAUGHTER, JJ., joined.

This is another case where an applicant pleaded guilty to possession of a controlled substance before laboratory testing on the substance was completed. I agree with the Court that Applicant is entitled to relief because the testing now shows he did not possess the controlled substance the State alleged he had possessed. In these types of situations, it should be enough that the State, the applicant, and the habeas court all agree that the applicant is entitled to relief. I write

separately to address the suggestion of overruling *Ex parte Mable*.[1]

In *Mable*, we held that a guilty plea to possession of a controlled substance was involuntary when the applicant did not know that the seized substances contained no illicit materials.[2]  We reasoned that this "fact [wa]s crucial to th[e] case, and while operating under such a misunderstanding, the applicant cannot be said to have entered his plea knowingly and intelligently."[3]

We have previously said that the Court should not frivolously overrule established precedent.[4]  "We follow the doctrine of *stare decisis* to promote judicial efficiency and consistency, encourage reliance on judicial decisions, and contribute to the integrity of the judicial process."[5]  Overruling precedent, however, is acceptable under certain circumstances when the goals of *stare decisis* would not be achieved.[6]  But those special

---

[1] *Ex parte Mable*, 443 S.W.3d 129 (Tex. Crim. App. 2014).  *See* Keasler, J., Concurring Opinion at 8-24.

[2] *Ex parte Mable*, 443 S.W.3d at 131.

[3] *Id.*

[4] *Paulson v. State*, 28 S.W.3d 570, 571 (Tex. Crim. App. 2000).

[5] *Id.*

[6] *Id.*; *Jordan v. State*, 54 S.W.3d 783, 786 (Tex. Crim. App. 2001) ("Some factors supporting the overruling of precedent are: (1) when the original rule is flawed from the outset, (2) when the reasons underlying the precedent have been undercut with the passage of time, and (3) when the rule consistently creates unjust results or places unnecessary burdens upon the system.").

circumstances are not present in the aftermath of *Mable*, and there is no reason to believe that adhering to *Mable* fails to achieve the goals of *stare decisis.*

The suggestion for overruling *Mable* seems to flow from *Ex parte Broussard*, where we held that, in a possession-of-a-controlled-substance case, the identity of the controlled substance isn't a crucial fact.[7] But we ignored our prior cases *Watson v. State* and *Mable*, both of which held that the identity of the controlled substance is an essential element of the offense of possession of a controlled substance.[8] We are better served by following that precedent than by jerry-rigging a different test that will ultimately result in the same relief as a straight-up application of *Mable*.[9]

To that end, I see no reason to overrule *Mable*. It is not enough to simply say that Applicant "knew that he did not know" the identity of the substance he possessed because that is not the whole picture. In these types of cases, both the applicant and the State are operating on the

---

[7] *Ex parte Broussard*, 517 S.W.3d 814, 820 (Tex. Crim. App. 2017).

[8] *Watson v. State*, 900 S.W.2d 60, 62 (Tex. Crim. App. 1995); *Ex parte Mable*, 443 S.W.3d at 131. *See also Nichols v. State*, 52 S.W.3d 501, 503 (Tex. App.—Dallas 2001, no pet.) ("If possession of each individual substance within a penalty group was the same statutory offense, the State could amend an indictment over objection, interchanging among any one of the *nine subsections and over one hundred complex chemical structures* individually composing Penalty Group 1, at will.").

[9] *See* Keasler, J., Concurring Opinion at 22.

assumption that the identity of the substance possessed is exactly what the State has alleged. This situation is distinguishable from that in *Ex parte Palmberg*.[10] In *Palmberg*, the fact that there was no substance left to be tested did not undermine both parties' assumption that Palmberg had possessed cocaine. In that sense, the lack of remaining evidence was not a crucial fact. But in *Mable*, the affirmative evidence showing that the substance possessed was not a controlled substance at all made it clear that both Mable and the State had wrongly assumed that Mable had actually possessed a certain controlled substance.[11]

The same holds true in this case. Applicant and the State both operated under the assumption at the time of the plea that Applicant had possessed methamphetamine, but later testing made it clear that both parties were mistaken. Applicant had actually possessed methylethcathinone.

The outlier, therefore, is not *Mable*—it's *Broussard*.[12] There is no meaningful distinction between the facts of this case and those in

---

[10] *Ex parte Palmberg*, 491 S.W.3d 804 (Tex. Crim. App. 2016).

[11] *Ex parte Mable*, 443 S.W.3d at 131.

[12] *Cf. Ex parte Johnson*, 541 S.W.3d 827, 830 (Tex. Crim. App. 2017) (overruling *Ex parte Sepeda*, 506 S.W.3d 25 (Tex. Crim. App. 2016) because it was "an anomaly in our habeas jurisprudence").

*Broussard*.[13]  In *Broussard*, both the State and Broussard operated under the assumption at the time of the plea that Broussard had delivered cocaine, but subsequent testing revealed that he had actually delivered methamphetamine.[14]  And yet, we distinguished *Broussard* from *Mable* by holding that the parties' mistake about the identity of the controlled substance did not render the plea involuntary.[15]  If we are going to get rid of one of these cases, it should be *Broussard* rather than *Mable.*

Discovering new information crucial to the plea bargain can retroactively invalidate the underlying agreement.  Under the well-established doctrine of mutual mistake, a contract can be rescinded "[w]here a mistake of both parties at the time the contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances."[16]  When both parties enter into a plea bargain while awaiting lab results, both parties operate

---

[13] Keasler, J., Concurring Opinion at 1, 7.

[14] *Ex parte Broussard*, 517 S.W.3d at 820.

[15] *Id.*

[16] *See Williams v. Glash*, 789 S.W.2d 261, 263-64 (Tex. 1990) (citing Restatement (Second) of Contracts § 152 (1981)); *see also United States v. Cook*, 406 F.3d 485, 487 (7th Cir. 2005) ("There are other grounds for rescinding a plea agreement besides ineffective assistance of counsel, such as mutual mistake. A plea agreement is a contract, and like any contract can be rescinded on the basis of such a mistake. . . . A defendant who has signed a plea agreement has all the defenses he would have under contract law, plus some.").

on the assumption that the testing will confirm what the State has alleged. Even if the parties are "rolling the dice," they are both betting on the same outcome based upon that assumption. If affirmative evidence reveals that they were both mistaken about the underlying assumption of the identity of the controlled substance, the plea bargain may be involuntary because of that mutual mistake. Given the inability to rely on sight alone to accurately identify most controlled substances[17] and the State's control of the investigation, analysis, and charging processes, it is appropriate to treat the plea as involuntary based on the mutual mistake about the identity of the controlled substance at issue.

I also disagree that *Mable* is unworkable. It provides a clear ruling that is easy to follow: when laboratory testing subsequent to a plea establishes that a defendant did not possess the drug he was alleged to have possessed, he gets his plea back. We are the ones who have continued to file and set these cases even though the State and the applicants repeatedly agree (and make their agreements clear to the habeas courts and this Court) that relief is warranted under *Mable*. We

---

[17] *See, e.g., Curtis v. State*, 548 S.W.2d 57, 59 (Tex. Crim. App. 1977) ("[W]e are unwilling to say that an experienced officer can look at a white or brown powdered substance and testify that it is heroin since morphine, codeine, paregoric, other opiates, other controlled substances, and noncontrolled substances also appear in white or brown powdered form.").

can quite easily apply *Mable* here to determine the outcome.[18]  Just because some don't want to doesn't make *Mable* unworkable.

What will be unworkable is holding that the identity of the controlled substance is not an essential element of a possession-of-a-controlled-substance offense.  If that were so, a defendant who possesses multiple different controlled substances that fall within the same penalty group would be guilty of only one offense.  Would the State have to prove that the defendant knew which penalty group the possessed substance belongs to?  And would the State ever even need to allege the specific controlled substance?  I see nothing wrong with holding the State to the burden of proving the specific identity of the controlled substance it alleges in the indictment.

In this case, the State and Applicant agree that relief is warranted under *Mable*.  The trial court agrees and recommends that we grant relief. Rather than overrule *Mable* and apply a due-process framework that will nevertheless invariably lead to the same results as *Mable*, I would hold that the identity of the controlled substance at issue is a material or "crucial" fact underlying the plea bargain and give the parties what they

---

[18] *See Carson v. State*, 559 S.W.3d 489, 495 (Tex. Crim. App. 2018).

ask for.  In light of this understanding, I believe Applicant's plea was involuntary because both parties in this case were mistaken at the time of the plea about a material fact—the identity of the controlled substance possessed.  With these thoughts, I concur.

Filed: June 26, 2019

Publish