**F I L E D**
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI

1/20/15

**DORIAN E. RAMIREZ, CLERK**
**BY** DTello

ACCEPTED
13-14-00448-CR
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
1/18/2015 7:43:30 PM
DORIAN RAMIREZ
CLERK

## NO. 13-14-00448-CR

### IN THE COURT OF APPEALS
### FOR THE THIRTEENTH DISTRICT OF TEXAS
### CORPUS CHRISTI, TX

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
1/20/2015 8:00:00 AM
DORIAN E. RAMIREZ
Clerk

_____

### ROLANDO ROMERO,
### APPELLANT

### VS.

### THE STATE OF TEXAS,
### APPELLEE

_____

### APPEAL FROM THE 94th DISTRICT COURT
### NUECES COUNTY, TEXAS
### TR. NO. 12-CR-3695-C

_____

### BRIEF FOR THE APPELLANT
_____

**Irma Mendoza Sanjines**
**S. B. N. 17635655**
**Wilson Plaza West, Ste. 504**
**P. O. Box 4005**
**Corpus Christi, TX 78469-4005**
**Tel.: (361) 883-6106**
**Fax: (361) 883-9650**
**irmasanjines@aol.com**

**Oral Argument Requested**

# CERTIFICATE OF INTERESTED PERSONS

1. **Parties:**

   Rolando Romero -Appellant
   Sid No. 1944502
   TDCJ-Garza East Unit
   4304 Hwy. 202, Beeville, TX 78102

   The State of Texas–Appellee
   Mark Skurka
   Nueces County District Attorney

2. **Counsel for Appellant:**

   Trial:        Amador C. Garcia
                   1521 S. Port, Corpus Christi, TX 78405

   Appeal:   Irma M. Sanjines

3. **Counsel for Appellee:**

   Trial:        Elizabeth J. Schmidt
                   Asst. District Attorney
                   901 Leopard
                   Corpus Christi, TX 78401

4. **Trial Judge:** The Hon. Bobby Galvan

# TABLE OF CONTENTS

**Page**

Certificate of Interested Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-iv

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5

Issues Presented  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

Summary of the Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6, 12-13

Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-12, 12-14

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Certificate of Service  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# INDEX OF AUTHORITIES

**Cases**                                                                **Page**

*Cantu v. State*, 557 S. W. 2d 107, 109 ( Tex. Crim. App. 1977). . . . . . . . . . . . . . . 9

*Carmouche v. State*, 10 S. W. 3d 323, 328 ( Tex. Crim. App. 2000) . . . . . . . . . . 7

*Ford v. State*, 158 S. W. 3d 488, 493 (Tex. Crim. App. 2005) . . . . . . . . . . . . . . . 8

*Graham v. Conner*, 490 U. S. 386, 109 S. Ct. 1865 (1989). . . . . . . . . . . . . . . . . . 7

Gurrola v. State, 877 S. W. 2d 300, 302-303 (Tex. Crim. App. 1994) . . . . . . . . . . 9

*Guzman v. State*, 955 S. W. 2d 85, 87-88 ( Tex. Crium. App. 1997) . . . . . . . . . . . 7

*Leighton v. State*, 544 S. W. 2sd 394 ( Tex. Crim. App. 1976). . . . . . . . . . . . . . . 8

*Martinez v. State*, 348 S. W. 3d 919, 922-23 ( Tex. Crim. App. 2011). . . . . . . 8,10

*Oliver v. United States*, 466 U. S. 170, 180 (1984) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pickens v. State*, 165 S. W. 3d 675, 680 ( Tex. Crim. App. 2005) . . . . . . . . . . . 13

*Roberts v. State*, 545 S. W. 2d 157 ( Tex. Crim. App. 1977) . . . . . . . . . . . . . . . . .6

*Rodriguez v. State*, 106 S. W. 3d 224, 228 ( Tex. App.-Houston 2003). . . . . . . . . 9

*Stone v. State,* 703 S. W. 2d 652, 655 ( Tex. Crim. App. 1986) . . . . . . . . . . . . . . 14

*Terry v. Ohio,* 392 U. S. 1, 30 88 S. Ct. 1868 (1968) . . . . . . . . . . . . . . . . . . . . . .7,8

*Thomas v. State,* 723 S. W. 2d 696, 707 ( Tex. Crim. App. 1986) . . . . . . . . . . . . 13

*United States v. Dunn, 480 U. S. 294 (1987).* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Valtierra v. State, 310 S.W. 3d 442, 447 (Tex. Crim. App. 2010)* . . . . . . . . . . . . . 7

*Wong Sun v. United States*, 371 U. S. 471, 83 S. Ct. 407 (1963) . . . . . . . . . . . . . . 8

**Statutes and Rules**

U. S. Const. amend. IV  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7,12

Tex. Const. 1, sec. 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Tex. Code Crim. Proc. Ann. art. 38.23(Vernon 2006) . . . . . . . . . . . . . . . .1,6,12-14

Tex. R. App. Proc. 39.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument because the facts and legal arguments as to the issue presented herein would be significantly emphasized and clarified by oral argument and the decisional process would be aided.  Tex. R. App. Proc. 39.2.

## STATEMENT OF THE CASE

Appellant (Romero) was charged in a third degree indictment filed on October 25, 2012 of Possession of a Controlled Substance (Cocaine), more than one gram but less than four grams. (CR p. 6)[1] Romero had been previously indicted for the same incident under Cause no. 11-CR-2892-C which was presumably dismissed without prejudice, absent the record of a double jeopardy claim at pretrial, and subsequently re-filed under 12-CR-3695-C. (Supp. RR p. 8).[2]

Romero filed a *pro se* Motion to Suppress which contained no allegations whatsoever of an illegal search for drugs. (CR p. 23) Romero's counsel also filed a Motion to Suppress which alleged an unlawful arrest by Officer Tacket without probable cause to detain in violation of Article 38.23, Code of Criminal Procedure. ( CR p. 71). The motion does not specifically invoke the Fourth Amendment to the U. S. Constitution but paragraph one (1) of the Motion asserts that Romero "was on his driveway", thus asserting the "curtilage" doctrine of the 4th Amendment to the U. S. Constitution. (CR, p. 71). Moreover, it is contained in

---

[1] "CR" refers to clerk's record on appeal followed by page number using pagination by the clerk of this court.

[2] "Supp. RR" refers to one volume of supplemental reporter's record filed on 12/17/14.

Article 38.23(a) of the Texas Code of Criminal Procedure.

A Motion to Suppress hearing was conducted on July 14, 2014 at which time the transcript of the motion to suppress hearing of May 18, 2012 under 11-CR-2892-C was entered as Exhibit 1. (Supp. RR, p. 5; Supp RR, Exhibit 1). The motion was denied on July 22, 2014, the day of the jury trial. ( 2RR p. 4, Supp. RR p. 1)[3] Romero made no request to carry the suppression issue to the jury and neither did it object nor verbally agree to the testimony of Officer Tacket at trial. (5 RR p. 27) The Charge of the Court does not contain an Article 38.23 instruction. (CR, pp. 96-100). Appellant did not request an instruction in the Jury Charge even though it did challenge the seizure of evidence during trial. (5 RR, p.10).

The jury found Romero guilty and sentenced him to the Texas Department of Criminal Justice for six years. (CR p. 101, 106). The court ordered the sentence to run consecutive to all other sentences under 06-CR-1498-C (2yrs SJF), 06-CR-2992-C(5yrs TDC) and A-11-5113-2-CR (10yrs TDC). (CR pp. 108-109)( RR p. 40). The record is absent of any excessive or "cruel and unusual punishment" objection to his sentence.

---

[3] "RR" refers to reporter's record as prepared by the court's reporter, using her volume number(preceding RR) and pagination (following RR).

STATEMENT OF FACTS

Romero was arrested on August 30, 2011 for this offense. He was arrested outside of his residence on the residence's driveway. **Officer Tacket**, the arresting officer, testified that he had been on the force for two years and this was his first time in that particular neighborhood that Romero lived in and he was conducting a burglary patrol at two a.m. (Supp RR pp. 10-11; Exhibit 1 p. 5-6) As he drove down a dark Hall Street, he saw a vehicle in a driveway whose interior lights went on as he passed by the residence. (Supp. RR, p. 12) Tacket saw a person, Romero, in the driver's seat and this person leaned to open the driver door. (Supp. RR, p. 12) Tacket agreed that no alarm sounded off as this happened, nor was Romero making any loud noises in the neighborhood nor attempting to leave with the vehicle. (Supp. RR, Exhibit 1, p. 12) Romero had all of his body inside this older model truck parked at a residence on an unfenced driveway. He saw Romero lean over to rummage through a glove box, as Romero continued to sit inside the vehicle, and at no time was his body outside the vehicle. (Supp. RR p. 11; Supp. RR, Exhibit 1, p.6-7). Officer Tacket sat and watched for awhile. He got out of his vehicle to approach the parked vehicle and do a "consensual" encounter. (Supp. RR p. 12) He testified that he didn't know what was occurring and did not believe that a crime was occurring. He agreed he had no probable cause to believe

3

a crime had been committed and didn't see illegal activity at the point he decided to approach the vehicle. (Supp. RR, p. 12; Supp. RR, Exhibit 1, p. 15) He testified he had a "hunch" about Romero even though he wasn't committing a particular violation. (Supp. RR p. 13; Supp RR, Exhibit 1, p. 13) He approached the vehicle without a flashlight even though there were no street lights on Hall Street and the only light was from the truck's interior light (Supp. RR, p. 13). Tacket testified that once he got to the vehicle to do a "consensual" encounter he saw wires hanging from the ignition. (Supp. RR, Exhibit 1, p. 8) Tacket testified that Romero didn't see him standing by the vehicle and only saw him when Tacket said, "Hey, what's going on," at which point Romero turned to look at him with a clear plastic bag in his hand. Romero quickly hid the plastic bag under his right leg and as he went to step out of vehicle he then accidentally swiped if off the seat, landing at Tacket's left foot. (Supp. RR p. 14-16). Tacket arrested Romero. Only after he arrested him, did he run license plate check and determined that the truck came back to that address and to his name. ( 5RR , p. 5) Tacket denied searching the residence. (Supp. RR, p. 20).

**Romero** testified, through an interpreter, that the residence at 5817 Hall Street belonged to him and where he lived with his wife and three children. (Supp. RR, p. 26). He testified that he had gone out that evening and was going to

4

go inside his residence and was looking for his keys to the residence when the officer approached the vehicle. (Supp. RR, p. 28) He denied holding the cocaine in his hand and having it in his vehicle and implied the contraband may have been planted by the officer. (Supp. RR, pp. 30-32). Romero testified that Tacket opened the door to his residence and lighted up the living room with his flashlight. (Supp. RR, p. 32). At punishment, Romero testified that he is a Mexican national and a legal resident of the United States, having lived here for thirty years. He is subject to a federal detainer and deportation. (CR p. 70)(6 RR, p. 20).

## ISSUE PRESENTED

**1.**
**Whether the controlled substance evidence**
**was seized in violation of Tex. Const. Art. I, §9, Tex.**
**Code Criminal Procedure Ann. Art. 38.23(a) or the Fourth Amendment**
**to the U. S. Constitution?**

## SUMMARY OF THE ARGUMENT

The issue of whether the seizure of the controlled substance was proper or unreasonable turns on whether the officer was properly outside of defendant's vehicle pursuant to a legitimate detention and investigation. If he was not, then the seizure of the cocaine, which was in plain view once the officer stood beside

5

the car, was an unreasonable and illegal detention and seizure of the property.

Moreover, the trial court raised the issue at the first suppression hearing of May 18, 2012, whether Romero had a heightened privacy interest since he was in a family vehicle which was on the driveway at Romero's residence. ( Supp. RR, Exhibit 1, p.17). Romero contends that, because he was on his driveway, he did have a 4th Amendment higher privacy interest than if his car was parked on the public street. In any event, Romero contends that the totality of the circumstances indicate that Officer Tacket's actions constituted an unreasonable and illegal detention of Romero, who was not free to leave, and illegal seizure of cocaine which the trial court should have suppressed. Romero contends that he has preserved this issue for appeal as he was not required to renew objections during trial on the merits that were made at the suppression hearing. *Roberts v. State*, 545 S.W. 2d 157 (Tex. Crim. App. 1977). Romero contends that the trial court was mandatorily required to include a §38.23 instruction in the Charge as this issue was raised by the facts at trial.

## Standard of Review

This Court uses a bifurcated standard of review that controls rulings on a motion to suppress in which an appellate court gives almost total deference to the trial court's determination of historical facts but reviews *de novo* the application of

6

the law to the facts.  When the trial court does not make explicit finds of historical facts, this Court views the evidence in the light most favorable to the trial court's rulings and assumes the trial court made implicit findings of fact supported by the record.  The trial court is the sole judge of the credibility of witnesses and their testimony.  *Valtierra v. State*, 310 S.W. 3d 442, 447 (Tex. Crim. App. 2010).  The question of "reasonable suspicion" is reviewed de novo as a question of law.  *Guzman v. State*, 955 S.W. 2d 85, 87-88 (Tex. Crim. App. 1997).

## ARGUMENT 1.

Citizens have the right to be free from unreasonable searches and seizures. The objective reasonableness standard is used when examining complaints arising from the investigatory stop of a free citizen.  U. S. Const. Amend. IV; *Graham v. Conner*, 490 U. S. 386, 109 S. Ct. 1865 (1989). The reasonableness of a search is determined by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate government interests. If an officer has reasonable suspicion to believe that an individual is involved in criminal activity, the officer may conduct a brief investigative detention.  *Carmouche v. State*, 10 S.W. 3d 323, 328 (Tex. Crim. App. 2000); .  *Terry v. Ohio*, 392 U. S. 1, 30, 88 S. Ct. 1868 (1968).   The reasonableness must be considered in view of the totality of circumstances at the inception of the encounter, and the officer must be able to

7

point to specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably suspect that a specific person had engaged in or was or soon would be engaging in criminal activity. *Ford v. State*, 158 S. W. 3d 488, 493 ( Tex. Crim. App. 2005). A reasonable suspicion must be based on more than a mere hunch or non-specific suspicion of criminal activity. *Terry v. Ohio*, p. 9. In order to support a finding of reasonable suspicion, the specific facts articulated by the officer must show that some activity out of the ordinary has occurred, some evidence that connects the detained to the unusual activity, and some indication that the unusual activity is related to a crime. *Martinez v. State*, 348 S.W. 3d 919, 922-23 (Tex. Crim. App. 2011). The inarticulate hunch, suspicion or good faith of an arresting officer is insufficient to constitute reasonable suspicion or probable cause for a temporary detention. *Leighton v. State*, 544 S.W. 2d 394 (Tex. Crim. App. 1976). A search or seizure at its inception is not validated by what it turns up. Evidence seized during an unlawful search cannot constitute proof against the victim of the search; the exclusionary rule prohibition extends as well to the indirect as the direct products of such invasion. *Wong Sun v. United States*, 371 U. S. 471, 83 S. Ct. 407 (1963). Whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person. *Terry v. Ohio*, p. 16. An encounter is

8

consensual, thus not requiring reasonable suspicion, when a private citizen may terminate at any time and the police officer's conduct would have communicated to a reasonable person that the person was free to decline the officer's request for information. *Gurrola v. State*, 877 S.W. 2d 300, 302-03 (Tex. Crim. App. 1994). The areas immediately surrounding or attached to a home are refereed to as "curtilage". Curtilage areas have a higher rights to privacy, not accorded to a public road or place. *Rodriguez v. State*, 106 S.W. 3d 224, 228 (Tex. App.–Houston 2003). The driveway may be included within the curtilage of a home and thus accorded constitutional privilege as the sanctity of a man's home and the privacies of life. *Oliver v. United States*, 466 U.S. 170, 180 (1984); *See Cantu v. Texas*, 557 S.W. 2d 107, 109 (Tex. Crim. App. 1977)(identifying a chicken coop as an area withing the protected curtilage). Scrutiny is exerted in driveway cases to determine whether the officer's entry onto the curtilage was reasonable. *United States v. Dunn*, 480 U. S. 294 (1987). The classes ultimately being denied equal privacy rights are minorities and the poor, who live mostly in urban areas and who cannot fence in their driveway areas surrounding the home, which would clearly constitute "curtilage", due to finances. By subjecting poorer people to a heightened risk of intrusion in their own driveway, courts allow government officials to use the court's authority as a justification for selectively

9

targeting members of a given community, such as the poor minority. See Brian J. Serr, *Great Expectations of Privacy: A New Model for Fourth Amendment Protection*, 73 Minn. L. Rev. 583, 585 (1989).

For there to be reasonable suspicion, there has to be suspicious activity. The law requires it. The articulable, specific facts that an officer has through his own observation must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime. *Martinez v. State,* 348 S.W. 3d 919, 922-923 (Tex. Crim. App. 2011). In Romero's case, Officer Tacket had no observations of unusual activity by a person who was parked in front of his residence. His testimony was general, to usual and normal activity. For instance, he testified that he saw a car light go on, caused by a man inside the car who leaned to open the driver's door. He testified that the man was rummaging through his glove box. He testified that the vehicle was on a driveway in front of a residence. This is normal and ordinary activity of any person who is in front of a house, presumably his, and wants to get out of their own vehicle and needs to acquire an item out of the vehicle. Officer Tacket testified that he was on burglary patrol for the first time in that neighborhood and that burglaries occurred in those neighborhoods. This was general not specific testimony by the officer. For instance, he didn't testify that he saw a man standing

10

outside the vehicle attempting to enter it, that an alarm was going off, that a reliable anonymous tip had come in of someone attempting a burglary, or that a burglary at a residence had just come in for that neighborhood. Officer Tacket testified that he a "hunch" that Romero was committing a burglary at the first suppression hearing. He admitted that he didn't know of a crime having been committed and didn't see illegal activity as he got off his car and approached the driveway. Officer Tacket did not have reasonable suspicion when he got out of his car to approach Romero's vehicle and "seize" Romero in an investigatory detention. Officer Tacket's testimony that it was two in the morning and that burglaries had occurred in the past was insufficient testimony for the trial court to find that the officer's action were justified and that reasonable suspicion existed at the time that the officer got to Romero's vehicle door. If the detention is bad or unjustified at the inception, then everything that follows is the fruit of the "poisonous tree." The Court looks only to those facts known to the officer at the inception of the stop–a stop or search unlawful at its inception may not be validated by what it turned up because it was tainted at its inception. *Wong Sun* at 489. The officer did not see the cocaine until he was by the truck door and saw it in Romero's hand. He did not see the cocaine in plain view from the street. The evidence of cocaine should have been suppressed by the trial court because it was

11

not justified, under the totality of the circumstances, for Officer Tacket to be standing on Romero's driveway at his truck door. Moreover, the trial court should have been wary of the officer's intent in that the officer approached the vehicle in total darkness, testifying that the street had no lights and he didn't use his flashlight presumably because he didn't want to make Romero aware of his approach. This was totally egregious behavior by a police officer in light of the fact that Romero had an expectation of privacy, as any citizen would, to be secure in his home and its curtilage as protected by the 4th Amendment to the U. S. Constitution. Thus, from the totality of the circumstances, the cocaine evidence was acquired in violation of the Article 1, Section 9 of the Texas Constitution and Texas Code of Criminal Procedure 38.23(a) and the Fourth Amendment to the U. S. Constitution.

## ISSUE PRESENTED

### 2.
**Whether the trial court committed reversible error when it did not include a § 38.23(a)jury instruction in the Charge of the Court?**

## SUMMARY OF THE ARGUMENT

Romero contends that the trial court was mandatorily required to include a §38.23 instruction in the Charge as this issue was raised by the facts at

12

his jury trial. Romero 's counsel stated in his opening statement at voir dire that there was no indication of a violation of law as the officer approached Romero's driveway. ( 5 RR, p. 10). Thereafter, Romero's counsel cross-examined Officer Tacket about the circumstances of the arrest. ( 5 RR, pp. 34-46).

## ARGUMENT 2.

The Exclusionary Rule of Article 38.23(a) proscribes admissibility of evidence against an accused in a criminal trial if the evidence was obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or law of the United States of America. When the evidence at trial raises a fact issue concerning the legality of a search or the arrest that produced evidence used at trial, Article 38.23(a) imposes a mandatory duty on the trial court to instruct the jury that if it believes , or has a reasonable doubt, that the evidence was obtained in violation of the provisions of the article, then and in such even, the jury shall disregard any such evidence so obtained. The trial court's duty does not arise, however, unless "there is a factual dispute about how the evidence was obtained." *Thomas v. State*, 723 S.W. 2d 696, 707 (Tex. Crim. App. 1986); *Pickens v. State*, 165 S.W. 3d 675, 680 (Tex. Crim. App. 2005). This rule should be applied to issues of fact raised concerning an officer's reasonable suspicion based upon articulable facts necessary to support a

13

brief investigative detention. Thus, if an issue is raised, the trial court must submit the requested charge. Since the evidence supporting the officer's stop was controverted by appellant, an issue was raised regarding the legality. The trial court was put on notice....therefore, the trial court was statutorily bound to submit a charge on the issue to the jury. *Stone v. State*, 703 S. W. 2d 652, 655 (Tex. Crim. App. 1986).

In Romero's case, the trial court was put on notice of the controverted issues of fact regarding Romero's detention by the Motion to Suppress which the trial court heard twice prior to denying it, and by the cross-examination of Officer Tacket by Romero's counsel at this jury trial. The trial court was mandatorily bound by Article 38.23(a) to include an exclusionary rule instruction in the Charge of the Court. The trial court erred by omitting the Article 38.23 instruction.

**PRAYER**

For the foregoing, Appellant requests this Court to reverse the trial court's ruling on his motion to suppress, and to vacate the judgment of conviction under this cause of action.

Respectfully submitted,

14

__/s/ *Irma Sanjines*_____
Irma Mendoza Sanjines
SBN 17635655
P. O. Box 4005
Corpus Christi, TX 78469
Tel: (361) 883-6106
Fax: (361) 883-9650

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation because it contains 3, 380 words.

2.      This brief complies with the typeface requirements because it has been prepared using WordPerfect X7 in Times New Roman 14 point font for text and 12 point font for footnotes, in standard 10 cpi  typeface.

__/s/ *Irma Sanjines*_____
Irma Mendoza Sanjines

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Appellee Brief was served upon the District Attorney's Office of Nueces County, Texas by electronic submission on January 18, 2015.

__/s/ *Irma Sanjines*_____
Irma Mendoza Sanjines